FLOYD L. CARLISLE, Respondent, *v.* JOHN J. BENNETT, JR., Individually and as Attorney-General of the State of New York, Appellant.*

Third Department, January 11, 1935.

* Affg. 153 Misc. 151.

*John J. Bennett, Jr., Attorney-General [Ambrose V. McCall, John F. X. McGohey* and *Margery Cederstrom, Assistant Attorneys-General,* of counsel], for the appellant.

*LeBoeuf, Winston, Machold & Lamb [Randall J. LeBoeuf, Jr., William A. Winston* and *Thomas F. Fennell* of counsel], for the respondent.

CRAPSER, J.. This controversy was initiated by the service on the plaintiff, on August 27, 1934, of four papers, in the form of subpœnas *duces tecum.* The subpœnas served upon the plaintiff purported to require the production by him of certain information, as follows: " A transcript of all loan accounts of Floyd L. Carlisle from 1925 to date, whether in his own name or in the name of another, giving name in which held, names of all corporations, companies, or individuals, with addresses, from whom he borrowed or to whom he loaned, directly or indirectly, money, securities, or other things of value, with itemized list of collateral pledged, if any."

" A complete list of all bank and brokerage accounts of Floyd L. Carlisle from January 1, 1925, to date, with dates of accounts, whether in his own name or in another's, and if in another name, the name and address of the company or individual holding it."

" A complete list from January, 1925, to date of all of the corporations or companies of which Floyd L. Carlisle has been an officer, director or stockholder, or with which he has been connected in any way, directly or indirectly, or from which he has received any remuneration, with dates and details of transactions."

" Transcript from January, 1925, to date of all purchases, sales, deals, options and/or contracts concerning securities of Niagara Share Corporation of Maryland and/or Niagara Share Corporation (of Delaware) and/or Buffalo, Niagara & Eastern Power Corp., and/or of Niagara Hudson Power Corp., entered into by Floyd L. Carlisle for his account or for the account of any partnership, corporation, company, trust or association with which he has been connected as officer, director, partner, trustee or otherwise."

The Attorney-General was engaged under article 23-A of the General Business Law, commonly known as the Martin Act, in an investigation of the practices of the Niagara Share Corporation of Maryland relating to the issue, negotiation and sale of securities in and from the State of New York.

The purpose of the investigation was to determine whether or not he would commence an action for an injunction pursuant to the provisions of that act.

Instead of complying with the subpœnas the plaintiff, respondent, commenced an action against the Attorney-General to enjoin and restrain him from examining him upon the subpœnas served on the ground that an attempted compliance by the plaintiff with the subpœnas would cause an irreparable damage and injury without serving any public interest and that the attempted examination was an invasion into the privacy of plaintiff's affairs.

The real purpose of the action brought was to have the court pass upon the right of the Attorney-General to examine him as broadly as the subpœnas indicated he desired to do.

The affidavit of the Assistant Attorney-General says: " That of necessity an investigation of Floyd L. Carlisle and his associates' methods in the distribution and sale of the securities of Niagara Share Corporation of Maryland and Niagara Hudson Power Corporation and others, required the issuance of what may appear, at first blush, to be rather broad subpœnas."

The Niagara Share Corporation was organized in Delaware in 1925 and its assets were taken over by the Niagara Share Corporation of Maryland in 1929. The plaintiff, respondent, had no connection whatever with either corporation until his election in May, 1931, as a member of the board of directors of the Niagara Share Corporation of Maryland.

It appears that from .1925 to the date of the subpœnas the plaintiff, respondent, had been connected as an officer or director with about fifty corporations engaged in varying business activities, such as the manufacture of paper, craft paper, artificial silk, and with the National City Bank and other banks of Northern New York.

Section 352 of article 23-A of the General Business Law deals with fraudulent practices in relation to stocks, bonds and other securities. Under said section if the Attorney-General believes that the conduct of such business is a fraudulent practice or practices, or he believes it to be in the public interest that an investigation be made, he may in his discretion either require or permit such person, partnership, corporation, company, trust or association to file with him a statement in writing under oath or otherwise as to all the facts and circumstances concerning the subject-matter which he believes it is to the public interest to investigate, and for that purpose may prescribe forms upon which said statements shall be made. The Attorney-General may also require such other data and information as he may deem relevant and may make

such special and independent investigations as he may deem necessary in connection with the matter. The Attorney-General, his deputy or other officer designated by him, is empowered to subpœna witnesses, compel their attendance, examine them under oath before him or a magistrate, a court of record, or a judge or justice thereof, and require the production of any books or papers which he deems relevant or material to the inquiry. If the person subpœned to attend such inquiry fails to obey the command of the subpœna without reasonable cause, or if a person in attendance upon such inquiry shall without reasonable cause refuse to be sworn or to be examined or to answer a question or to produce a book or paper when ordered so to do by the officer conducting such inquiry, he shall be guilty of a misdemeanor.

The injunction order appealed from only precludes the Attorney-General from obtaining information clearly irrelevant and immaterial and restricts him from examining into the personal affairs of the plaintiff, respondent, which can have nothing whatever to do with the subject-matter of the inquiry which he is conducting. He is permitted to issue new subpœnas by which he can command the plaintiff, respondent, to appear and bring with him any books or papers which may be relevant to the inquiry which he is conducting.

The subpœnas cover several years of time before the plaintiff, respondent, ever had anything to do with, or the Niagara Share Corporation was incorporated.

The courts pass no judgment upon a question which the Legislature under its constitutional power has submitted for decision to its administrative officers in the performance of purely administrative functions. The Legislature has the power of legislation and can authorize the Attorney-General to take testimony in order to enforce its laws, but such testimony must be material and necessary to the subject of the inquiry. No general inquiry into private affairs is authorized nor general production of books and papers required. (*Matter of Davies*, 168 N. Y. 89.)

The Attorney-General does not have the power under section 352 of the General Business Law to institute a general investigation of all the books of a person or firm, but is limited to an investigation relative to the matter in question.

The Attorney-General is authorized to require such data and information as he may deem relevant and he may make such special investigations as he deems necessary. To that end, he is empowered to subpœna witnesses, examine them under oath, and require the production of any books or papers he may deem relevant or material to the inquiry.

Justice HOLMES writing in the case of *Federal Trade Commission* v. *American Tobacco Company* (264 U. S. 298; 44 Sup. Ct. 336), which was a case dealing with a resolution in the Senate directing the Federal Trade Commission to investigate and report the tobacco situation as to domestic and export trade, says: " The interruption of business, the possible revelation of trade secrets, and the expense that compliance with the Commission's wholesale demand would cause are the least considerations. It is contrary to the first principles of justice to allow a search through all the respondents' records, relevant or irrelevant, in the hope that something will turn up. * * * The right of access given by the statute is to documentary evidence — not to all documents, but to such documents as are evidence. The analogies of the law do not allow the party wanting evidence to call for all documents in order to see if they do not contain it. Some ground must be shown for supposing that the documents called for do contain it. * * * A ground must be laid and the ground and the demand must be reasonable." (*Essgee Co.* v. *United States*, 262 U. S. 151, 156, 157; 43 Sup. Ct. 514.)

Some evidence of the materiality of the papers demanded must be produced. (*Hale* v. *Henkel*, 201 U. S. 43, 73; 26 Sup. Ct. 370.)

For all that appears, the plaintiff, respondent, would have been willing to produce such papers as he conceived to be relevant to the matter in hand; if his judgment upon that matter was not final, at least some evidence must be offered to show that it was wrong: no such evidence is shown. (*Terminal Taxicab Co.* v. *District of Columbia*, 241 U. S. 252, 256; 36 Sup. Ct. 583.)

The courts are given power to review or set aside a subpœna issued by the Attorney-General where the matters called for are not material or relevant to the matter under investigation and in which he seeks to examine all of the books, papers and documents of a witness without showing that they are material. (*Interstate Commerce Commission* v. *Brimson*, 154 U. S. 447; 14 Sup. Ct. at p. 1133.)

In that case the court was construing an act of Congress authorizing the Interstate Commerce Commission to summon witnesses, and to require the production of books, papers, tariffs, contracts, agreements and documents relating to the matter under investigation, and the court said: " Whether the Commission is entitled to the evidence it seeks, and whether the refusal of the witness to testify or to produce books, papers, etc., in his possession, is or is not in violation of his duty or in derogation of the rights of the United States, seeking to execute a power expressly granted to Congress, are the distinct issues between that body and the witness. They are issues between the United States and those

who dispute the validity of an act of Congress and seek to obstruct its enforcement. And these issues, made in the form prescribed by the act of Congress, are so presented that the judicial power is capable of acting on them. * * * We do not overlook these constitutional limitations which, for the protection of personal rights, must necessarily attend all investigations conducted under the authority of Congress. Neither branch of the legislative department, still less any merely administrative body, established by Congress, possesses, or can be invested with, a general power of making inquiry into the private affairs of the citizen." (*Kilbourn* v. *Thompson*, 103 U. S. 168, 190.)

In *Boyd* v. *United States* (116 U. S. 616, 630; 6 Sup. Ct. 524) it was said that the principles that embody " the very essence of constitutional liberty and security," forbid " all invasions on the part of the government and its employees of the sanctity of a man's home and the privacies of life."

As said by Circuit Justice FIELD, in *Matter of Pacific Railway Comm.* (32 Fed. 241, 250): " Of all the rights of the citizen, few are of greater importance or more essential to his peace and happiness than the right of personal security, and that involves, not merely protection of his person from assault, but exemption of his private affairs, books and papers from the inspection and scrutiny of others. Without the enjoyment of this right, all other rights would lose half their value."

Where the statute has given an officer power to require the attendance of witnesses, no legal wrong is suffered by the person subpoenaed unless he is wrongfully compelled to answer questions after refusal, and he may ask the protection of the court only upon such refusal. A direction to produce a book or paper may in itself, if enforced, work harm to its custodian, and possibly infringe his constitutional rights, even though the document be not received in evidence. The Legislature has, therefore, provided that such a direction may be made only in a proper case. This limitation would be ineffectual unless the person subpoenaed may secure an adjudication as to whether a proper case is presented before he can be compelled to obey the command contained in the subpoena. (*Matter of Hirshfield* v. *Craig*, 239 N. Y. 98, 118; *Dunham* v. *Ottinger*, 127 Misc. 683; affd., 243 N. Y. 423; *Matter of Barnes*, 204 id. 108; *Matter of Hirshfield* v. *Hanley*, 228 id. 346, 349; *Matter of Hertle* [*In re Ahearn*], 120 App. Div. 717; *Matter of Gilchrist* [*In re Dahl*], 130 Misc. 456; *Matter of Foster*, 139 App. Div. 769; *Matter of MacNamara*, 128 Misc. 84; *Harriman* v. *Interstate Commerce Comm.*, 211 U. S. 407; 29 Sup. Ct. 115.)

A person who refuses to obey a subpœna issued by the Attorney-General to bring with him such papers as he may be demanded to bring is made guilty of a misdemeanor which may be punished by a fine and imprisonment. It is unreasonable to require a witness subpœned for an examination to take the position that his answers might incriminate him, or to determine at his peril whether a refusal to answer would be with or without reasonable cause. He is entitled, if he believes that the subpœna served upon him requires the production of books, papers or acts which are beyond the authority of the Attorney-General to require under the act, to enjoin the Attorney-General. (*People* v. *Canal Board of N. Y.*, 55 N. Y. 390.)

The Attorney-General in this proceeding, judging from the subpœnas, attempted to embark upon a roving course for the purpose of generally prying into the affairs of the plaintiff, respondent; he had no such authority.

The order of the Special Term appealed from should be affirmed, with costs.

HILL, P. J., and HEFFERNAN, J., concur; BLISS, J., concurs in the affirmance as to the first three subpœnas and dissents and votes to reverse as to the fourth subpœna, with an opinion; RHODES, J., dissents and votes to reverse on the ground that the action is prematurely brought and, therefore, the injunction should not have been granted, and the plaintiff has adequate remedies at law.

BLISS, J. This is an appeal by the defendant from an order granting plaintiff an injunction, pending the determination of this action, against the defendant from examining plaintiff or his records upon the subject contemplated in the subpœnas *duces tecum* annexed to the complaint and from requiring the plaintiff to produce the data specified in such subpœnas. The contents of the subpœnas are set forth in full in Justice CRAPSER'S opinion. The subpœnas themselves show that the plaintiff was subpœnaed to testify " relating to the practices of Niagara Share Corporation of Maryland and Floyd L. Carlisle and others in the issue, negotiation and sale of securities in and from the State of New York." The affidavits submitted on the motion show that the Attorney-General was investigating not only the Niagara Share Corporation of Maryland but also the plaintiff Floyd L. Carlisle and a number of other individuals and corporations, including Niagara Hudson Power Corporation, Schoellkopf, Hutton & Pomeroy, Inc., and F. L. Carlisle & Co., Inc., in regard to their dealings in securities within and from the State of New York. The investi-

gation was not limited to the Niagara Share Corporation but included a considerable number of individuals and corporations.

Practically all of the law necessary to the decision of this motion is given us by the Court of Appeals in two cases, viz., *Matter of Davies* (168 N. Y. 89) and *Dunham* v. *Ottinger* (243 id. 423). It is held in those cases that the testimony sought by the Attorney-General in such an investigation " must be material and necessary so that there is reasonable protection against danger of abuse. No general inquiry into private affairs is allowed, nor general production of books and papers is required." (*Matter of Davies, supra,* at p. 106.)

" Its general plan and scope seem to be perfectly plain. The Attorney-General as an executive official of the State is given the power by appropriate injunctive action to restrain any person who is engaged or who is about to engage in the business of selling the securities and commodities designated in the statute by means and aid of fraudulent methods and practices which likewise are therein defined. He is also given the power through appropriate procedure to institute criminal prosecutions against such a person. And while the language of the statute confers upon him a permissive privilege to do these things there is no doubt that it imposes upon him the mandatory duty to perform them and thus protect the public. But the attempt to discharge the duty in a given case without any adequate and accurate knowledge of the facts might result either in an ineffective and abortive attempt or in the unjust prosecution of persons who were guilty of no offense or violation. Therefore, the Attorney-General as an administrative official charged with the duty of enforcing the statute is given the power to secure from a person whom he suspects of violation of the statute by means of questionnaire, oral examination and inspection of books, under conditions of absolute secrecy, the information which will enable him to determine whether the foundation does exist for further proceedings and which information, subject to the immunity hereinafter to be referred to, may be utilized in the prosecution authorized by the statute. And it is in the light of such features as these that we come to a consideration of the objections which have been mentioned. * * *

" The statute does not commission the Attorney-General to embark upon any roving course for the purpose of generally prying into the affairs of any person. Having authorized him to institute proceedings to prevent or punish violations of the statute it authorizes him to acquire information, make investigations and conduct examinations ' as to all the facts and circumstances concerning the subject matter which he believes it is to the public

interest to investigate.' Or again, to examine witnesses under oath and require the production of any books or papers 'which he deems relevant or material to the inquiry.' This all to the end of enabling the Attorney-General to determine whether a situation exists which calls upon him for action under the other provisions of the statute and it is to be assumed that he will proceed in good faith and with knowledge of and regard for the principles which govern the relevancy of evidence." (*Dunham* v. *Ottinger, supra,* at pp. 432–434.)

Our question is whether the information sought by the Attorney-General through the means of these subpœnas *duces tecum* was necessary and material to the inquiries which he was conducting. In determining this question we must assume that the Attorney-General was acting in good faith and within the law.

The proof shows here that the plaintiff Carlisle was interested in a large number of corporations having interlocking directorates and transactions in securities between themselves, which were of such a nature that it would be impossible for any public officer to trace these transactions without the issuance of subpœnas very extensive in their specifications. The proof shows that the Niagara Share Corporation of Delaware was the predecessor of the Niagara Share Corporation of Maryland and that the Buffalo, Niagara and Eastern Power Corporation is a subsidiary of the Niagara-Hudson Power Corporation.

With this basis of fact the Attorney-General has asked the plaintiff in the first three subpœnas to produce transcripts of *all* of his loan accounts, a list of *all* bank and brokerage accounts and a list of *all* corporations of which he has been an officer, director or stockholder from January, 1925, down to date. This data should have been limited to the subjects of the inquiry. The plaintiff was engaged in other lines of business than the sale of securities and as an officer or director of the various power corporations mentioned. The data should have been limited to transactions in some way connected with or relevant to the subjects of the inquiry. These subpœnas called for information as to *all* of his loan and bank accounts and *all* corporations with which he was connected. They were, therefore, too broad.

The fourth subpœna called for a transcript from January 1, 1925, to date of all of plaintiff's transactions in his own name or otherwise concerning securities of Niagara Share Corporation of Maryland and/or Niagara Share Corporation (of Delaware) and/or Buffalo, Niagara and Eastern Power Corporation and/or of Niagara-Hudson Power Corporation. These were all corporations, the sale of whose securities were under inquiry or which were directly

connected with the corporations whose security transactions were under inquiry. This subpœna called only for data which were relevant to the subject of the inquiry. The motion, therefore, should have been denied as to this subpœna.

The order appealed from should be reversed in so far as it applies to the fourth subpœna and affirmed as to the three other subpœnas.

Order affirmed, with ten dollars costs and disbursements.