In the Matter of HORN CONSTRUCTION Co., INC., Appellant, *v.* ARNOLD G. FRAIMAN, as Commissioner of Investigation of the City of New York, Respondent.

First Department, April 21, 1970.

*Mario Matthew Cuomo* of counsel (*Corner, Finn, Cuomo & Charles*, attorneys), for appellant.

*Robert T. Hartmann* of counsel (*Stanley Buchsbaum* with him on the brief; *J. Lee Rankin, Corporation Counsel*), for respondent.

STEVENS, P. J. This is an appeal from an order-judgment entered September 16, 1969, which denied an application to quash a subpoena duces tecum.

In October, 1967 Horn Construction Co., Inc. (Horn) entered into a contract with the New York City Department of Marine and Aviation (M & A) for the demolition of certain piers in Manhattan. Horn subcontracted the work to City Demolition Corporation (Demolition) at an agreed lump sum of $76,000. Demolition commenced operations at the pier site in October, 1967. Demolition ceased its operations under the subcontract on or about October 28, 1967, and the remaining demolition work was subcontracted to Hammer-Barr, Inc., which completed the job in April, 1968. Horn asserts Demolition's subcontract was terminated because of its numerous serious violations of the Administrative Code in the manner of its job performance which resulted in at least four summonses by the Fire Depart-

132

ment, and because of its failure to employ union labor. Horn states that following upon Demolition's discharge Demolition threatened to make trouble for it.

November 21, 1967, Demolition filed a $96,000 mechanic's lien for work allegedly performed under the subcontract, which it later permitted to expire when proceedings were commenced under section 38 of the Lien Law.

In or about March, 1968, Demolition complained to respondent that it was compelled to cease work under its subcontract because of harassment by city inspectors resulting from Demolition's refusal to pay a $4,000 bribe demanded by an inspector employed by M & A. Demolition asserted it told Horn's general superintendent and Horn's job superintendent of the demand. The assertion in respondent's brief that an employee of Horn suggested payment is not supported in the record.

Following receipt of Demolition's complaint respondent commenced an investigation. Horn's two employees, to whom Demolition allegedly communicated information of the bribe demand, have been examined repeatedly and at length. All of the job records dealing with Horn's contract with M & A, and its performance of the same were produced and examined and, in several instances, copies of the same were made by respondent. While the examination and records inspections were under way respondent issued a subpoena duces tecum dated September 4, 1968. Though contending the subpoena was invalid, Horn continued to co-operate.

A dispute later arose because of Horn's insistence that only the records pertaining to this job be produced. Respondent asserts he is entitled to examine *all* of Horn's records of all payments on any job of Horn's during the period covered by the subpoena, i.e., from July 1, 1967, a period prior to the contract, to June 30, 1968. Horn is recognized as a major corporation in the construction industry with various job contracts outstanding involving millions of dollars at any given time. The record indicates that its job contracts extend far beyond the City of New York.

When the parties continued in disagreement as to the scope of the examination Horn moved to quash the subpoena duces tecum. Special Term, though denying the motion "stated at the outset that there is no evidence referred to on this application of any involvement of Horn in the alleged bribery, which is the subject matter of the commissioner's investigation". The question was considered to be merely "whether the commissioner shall be permitted to make a complete inspection of its records to determine whether it made such alleged payment."

On appeal, in support of his position, respondent refers to his broad powers of investigation in urging that the subpoena is valid. Subdivision 2 of section 803 of the New York City Charter authorizes and empowers the Commissioner of Investigation "to make any study or investigation which in his opinion may be in the best interests of the city, including but not limited to investigations of the affairs, functions, accounts, methods, personnel or efficiency of any agency", and asserts that it is making such an investigation with respect to M & A. Respondent urges further that compliance places no undue burden on Horn and the records bear a reasonable relation to the subject matter of the investigation.

At the outset there is no question but that respondent is empowered to issue a subpoena duces tecum, and that his opinion, under the statute, is the determining factor as to what investigations shall be undertaken. Where, as here, such a subpoena is issued after extensive examination of witnesses and documents, the initial presumption of validity and reasonable relation does not necessarily obtain. When a subpoena duces tecum is attacked, as here, after an investigation of the scope and extent already had, it would seem incumbent on the respondent to establish clearly the reasonable relationship of the relief sought to the objective proclaimed, or at least establish such basis that it may reasonably be concluded that its efforts would or reasonably might prove fruitful. Continued fishing in otherwise apparently calm waters in the mere hope that some lead or indicia of possible wrongdoing will be uncovered is not what we believe the statute intended (cf. *Matter of A'Hearn* v. *Committee on Unlawful Practice of Law*, 23 N Y 2d 916, 918).

Respondent has not shown that the desired records for the period sought, of the scope indicated, are relevant and material to his inquiry (*Matter of Spector* v. *Allen*, 281 N. Y. 251, 258; *Matter of A'Hearn*, *supra*). In *Matter of Edge Ho Holding Corp.* (256 N. Y. 374), upon which much reliance is placed, the witnesses seeking to vacate the subpoena moved immediately upon service of the process. The motion was denied at Special Term, which denial was reversed by the Appellate Division. The Court of Appeals, in reversing the Appellate Division, observed that it could not say with fairness that the evidence sought was unrelated to the inquiry. The fact that the application to vacate was made instantly, at the threshold of the inquiry is, we think, a feature which distinguishes that case from the case before us.

134

Examination of the subpoena reveals that it is without limitation for the period covered, but seeks all of the records specified whether or not they deal with the job contract in question. In a corporation of the size and work complexity of Horn this, in our view, is unduly burdensome where there is not a sufficient showing of necessity, materiality or relevance. Especially is this true where Horn is not accused of any crime, even inferentially. It is concluded that the disclosure sought is unreasonable by reason of its breadth in the absence of a showing of materiality and relevance (cf. *Federal Trade Comm.* v. *American Tobacco Co.*, 264 U. S. 298).

While respondent is given broad powers (*Matter of Dairymen's League Co-op Assn.* v. *Murtagh*, 274 App. Div. 591, affd. 299 N. Y. 634; Charter, § 803, *ante*), it has been stated that such powers are to be exercised as a means to the better discharge of his duties. In other words the disclosure sought in a proper case should be shown to be relevant and material to the matter in question (see *Carlisle* v. *Bennett*, 243 App. Div. 186; 1 N. Y. Jur., Administrative Law, § 41). This is not shown here. It is concluded that the disclosure sought is also unduly burdensome.

The order-judgment appealed from should be reversed on the law and the application to quash granted, without costs to either party.

MARKEWICH and STEUER, JJ., concur; McGIVERN, J., dissents and votes to affirm.

Order and judgment (one paper) entered on September 16, 1969, reversed on the law and the application to quash granted, without costs to either party.