In the Matter of SIDNEY SUSSMAN, as Chairman of the Board of the Sullivan County Harness Racing Association, et al., Respondents, v NEW YORK STATE ORGANIZED CRIME TASK FORCE et al., Appellants.

In the Matter of the SULLIVAN COUNTY HARNESS RACING ASSOCIATION, INC., Respondent, v NEW YORK STATE ORGANIZED CRIME TASK FORCE et al., Appellants.

Third Department, May 29, 1975

*Maxwell B. Spoont (Seale W. Tuttle* and *John Laurence Kase* of counsel), for appellants.

*Cooke, McBride, Davis & Greenberg (Herald Price Fahringer* of counsel), for respondents.

KANE, J. The New York State Organized Crime Task Force (hereinafter OCTF) came into being in 1970 pursuant to section 70-a of the Executive Law which statute invested it with, among others, the powers and duties:

"(a) To conduct investigations and prosecutions of organized crime activities carried on either between two or more counties of this state or between this state and another jurisdiction;

"(b) To cooperate with and assist district attorneys and other local law enforcement officials in their efforts against organized crime." These basic functions were supplemented by further provisions regarding staff, assistance from other agencies, the power to subpoena, the grant of immunity to witnesses, and the ability to appear before grand juries under certain conditions (Executive Law, § 70-a).

On January 14, 1974, an investigation was instituted by OCTF for the stated purpose of inquiring into the alleged "fixing" of horse races at Monticello Raceway, operated by the respondent Sullivan County Harness Racing Association (hereinafter SCHRA), and at other tracks in New York State. In April of 1974, during the course of its investigation, OCTF

subpoenaed and obtained certain documents and records from SCHRA's comptroller which included bank statements, disbursement books and journals, vouchers and canceled check stub books. An order for the impoundment of the surrendered items was ultimately secured pursuant to a stipulation of the parties. In June of 1974 four additional nonjudicial subpoenas were issued which sought further corporate records, including minute books and resolutions, pertaining to disbursements made to the president of SCHRA and for certain other purposes. Addressed to corporate officers or directors, these subpoenas similarly failed to specify the nature of any alleged organized intercounty or interstate criminal activity then being investigated and, in fact, on their face appeared to seek information relating to internal corporate or personal affairs. An application to quash all subpoenas was made and Special Term ordered adversary hearings, gave OCTF an opportunity to make a factual showing to demonstrate sufficient grounds to support the issuance thereof and, ultimately, granted the application, vacated the prior stipulation and order of impoundment, and directed the forthwith return of all records previously surrendered. This appeal by OCTF then ensued.

The law is clear that the Legislature may not confer upon an executive unbridled discretion as to the scope of his investigations, and that any inquiry must be circumscribed by the reasonableness of its relation to the matter under investigation and to the public purposes to be achieved thereby *(Carlisle v Bennett,* 268 NY 212; *Dunham v Ottinger,* 243 NY 423; *Matter of Hirshfield v Hanley,* 228 NY 346; *Matter of Horn Constr. Co. v Fraiman,* 34 AD2d 131, affd 29 NY2d 559; *Matter of Dairymen's League Co-op. Assn. v Murtagh,* 274 App Div 591, affd 299 NY 634).* The central issue on this appeal is whether OCTF must establish a factual basis justifying the issuance of these subpoenas in the first instance, or whether the subject matter of an investigation and the concomitant power to subpoena is a matter within the discretion of the OCTF without any necessity for a preliminary showing that the subject of such an inquiry is within the exercise of its statutory authority. While it is true that "only where the futility of the process to uncover anything legitimate is inevitable or obvious must there be a halt upon the threshold" *(Matter of Edge Ho Holding Corp.,* 256 NY 374, 382), here the subpoenas themselves fail to demonstrate that the records and documents sought bear any reasonable relationship to matters

properly under OCTF's investigatory jurisdiction; namely, "organized criminal activity."

In fact, when challenged, the affidavits and exhibits offered by OCTF recounted matters solely of internal management and personal interest and were devoid of reference to multi-county or State transactions of an organized criminal character. Mere supposition that there may exist some violation of law is not enough; there must be some factual showing of authority, relevancy, and a basis for inquisitorial action *(Meyerson v Lentini Bros. Moving & Stor. Co.,* 33 NY2d 250; *Matter of A'Hearn v Committee on Unlawful Practices of Law of N. Y. County Lawyers' Assn.,* 23 NY2d 916, cert den 395 US 959). The evidence presented at the hearing, directed by Special Term for the specific purpose of allowing OCTF a further opportunity to develop the bases for its action, is simply insufficient to show that the information sought was material or relevant to an investigation of "organized criminal activity." Although the term "organized crime" is not legislatively defined and acceptable definitions may be somewhat elusive, the statutory scheme set forth in section 70-a of the Executive Law is patently designed to arrest the evils of concerted criminal activity crossing county and State lines which, by its very diversity, is sometimes beyond the control of local officials, often with limited staffs. Moreover, the statute specifically contemplates that OCTF will "assist" local authorities. By no reasonable interpretation could such a provision be deemed to authorize the substitution by OCTF of itself for constitutionally designated local officials who are charged with the primary responsibility of prosecuting criminal matters of a purely local character. In addition, it should be noted that OCTF is vested with the specific power to obtain whatever co-operation and assistance it may require from any agency of the State or political subdivision (Executive Law, § 70-a, subd 3). Normal investigatory practices would plainly suggest alternative avenues of inquiry, or at least the establishment of a more secure factual foundation, before resort is had to the issuance of subpoenas which immediately alert any ultimate target of an inquiry to the nature of its objective. With such broad powers available, it cannot be successfully argued that court imposed standards guarding against the improper issuance of a nonjudicial subpoena duces tecum will pose any impediment or create an undue hindrance to the proper functioning of an investigatory body such as OCTF.

Accordingly, and for the reasons stated, the orders appealed from should be affirmed. However, upon examination of the entire record, we perceive no basis for sealing the records on appeal before this court and the same are directed to be filed as public records. The stay heretofore issued pending appeal is vacated.

The orders should be affirmed and the stay vacated, without costs.

HERLIHY, P. J., SWEENEY, MAIN and REYNOLDS, JJ., concur.

Orders affirmed and stay vacated, without costs.