OPINION OF THE COURT
Denise A. Hartman, J.
Petitioner New York Joint Commission on Public Ethics (JCOPE) commenced this proceeding to compel respondent Campaign for One New York, Inc. to comply with an August 12, 2015 subpoena duces tecum and an April 22, 2016 subpoena duces tecum, which were issued pursuant to Executive Law § 94. Respondent Campaign cross-moved for a protective order limiting production of privileged documents sought by the 2015 subpoena, to quash the 2016 subpoena, and for an order “protecting [it] from and against further unauthorized investigatory demands, harassment, annoyance, or abusive tactics.”
JCOPE has established that it had the authority to issue both subpoenas, that a factual basis exists for issuing the subpoenas, and that the material sought bears a reasonable relation to the subject matter of the investigation for all documents except for documents requested from 2013. Campaign has not established that the documents for which it seeks a protective order are privileged. But it has raised a question of fact whether the attorney work product privilege applies to four of the documents. Campaign must provide those documents to the court for in camera review. Accordingly, petitioner’s motion to compel is granted in substantial part, and respondent’s cross motion for a protective order and to quash is denied in substantial part.
Background
JCOPE initiated a preliminary investigation of Campaign in May 2015 into whether Campaign had violated the Lobbying Act by failing to register and report as a lobbyist for the calendar year 2015 {see Executive Law § 94 [13] [a]). Campaign voluntarily met with JCOPE on May 13, 2015, produced requested documents on May 18, 2015, and provided further documents on May 29, 2015. On June 9, 2015, JCOPE notified *986 Campaign of potential violations of Legislative Law §§ 1-e, 1-h, and 1-j. Campaign answered JCOPE’s allegations with a letter dated June 25, 2015 and an affidavit from its chairman and president, stating that Campaign had no intention to lobby or register as a lobbyist in 2015, despite having previously lobbied in 2014.
On July 2, 2015, JCOPE sent Campaign a notice of substantial basis investigation, framing the allegations of the investigation as a knowing and willing failure to register as a lobbyist in 2015.[1] JCOPE issued its first subpoena duces tecum on August 12, 2015 seeking 24 categories of documents. After correspondence between JCOPE and Campaign regarding the scope of the subpoena, Campaign began producing the subpoenaed documents on a rolling basis. Campaign, at JCOPE’s direction, identified potential objections and privilege claims in a September 28, 2015 letter; its objections focused on two categories of documents, requests 18 and 21.
On November 20, 2015, Campaign completed its response to the 2015 subpoena. Its response included a privilege log which identifies various documents that it claims are exempt from disclosure pursuant to the deliberative process, proprietary trade secret, attorney-client, attorney work product, and common interest privileges. After JCOPE sought a more detailed privilege log, on January 5, 2016, Campaign submitted further support for the privileges it asserted.
In February 2016, JCOPE began contacting donors to Campaign. On March 29, 2016, it held interviews with Campaign Chairman Bill Hyers and former employee Hayley Prim. On April 6, 2016, Campaign voluntarily submitted additional documents in relation to those interviews.
On April 22, 2016, JCOPE issued a second subpoena duces tecum, demanding all documents relating to expenses, income, and correspondence sent in response to donations received, from November 5, 2013 to the date of compliance. On April 28, 2016, JCOPE revived its demand for documents sought by the 2015 subpoena that Campaign had included in its privilege log. On May 6, 2016, Campaign sent a letter to JCOPE stating that it would not produce any more documents pursuant to the 2015 subpoena and that it would not comply with the 2016 subpoena. Following Campaign’s letter, JCOPE initiated this proceeding.
*987 Arguments of the Parties
JCOPE asserts that Campaign waived its objections to the subpoenas by partially complying with the first and by not timely moving to quash the second. On the merits, JCOPE contends that it possesses the requisite statutory power to examine the documents in question to determine whether Campaign violated the Lobbying Act by lobbying without registering as a lobbyist. With respect to the 2015 subpoena, Campaign has asserted that several of the documents sought by the 2015 subpoena are protected by various privileges, including the deliberate process, proprietary trade secrets, attorney-client, attorney work product, and common interest. With respect to the 2016 subpoena Campaign claims that, because the investigation — with which it cooperated until shortly before the commencement of this proceeding — has not uncovered any direct evidence of unregistered lobbying, JCOPE should not be permitted to broaden the scope of its investigation.
Analysis
Campaign is Not Precluded from Seeking a Protective Order or to Quash
Campaign did not waive its right to seek a protective order and its cross motion to quash is timely. “[A] witness subject to a ‘non-judicial’ subpoena duces tecum may always challenge the subpoena in court on the ground it calls for ir-revelant or immaterial documents or subjects the witness to harassment” (Myerson v Lentini Bros. Moving & Stor. Co., 33 NY2d 250, 256 [1973] [denying motion to compel, and granting cross motion to quash, non-judicial subpoena]). “If the subpoena is not returnable in a court, a request to withdraw or modify the subpoena shall first be made to the person who issued it and a motion to quash, fix conditions or modify may thereafter be made in the supreme court” (CPLR 2304). By asserting potential objections and privilege claims to the 2015 subpoena in its September 28, 2015 letter and requesting JCOPE withdraw the 2016 subpoena in its May 6, 2016 letter, Campaign has complied with the requirements of CPLR 2304. Thus, it can bring a motion for a protective order limiting the 2015 subpoena and a motion to quash the 2016 subpoena.
JCOPE’s arguments to the contrary lack merit. It asserts that Campaign waived its right to move for a protective order limiting the 2015 subpoena from requiring production of *988 privileged materials, and to quash the 2016 subpoena because Campaign partially complied with the 2015 subpoena and never timely filed a motion to quash either subpoena. JCOPE argues that “[a] motion to quash or vacate ... is the proper and exclusive vehicle to challenge the validity of a subpoena or the jurisdiction of the issuing authority,” and that “[s]uch a motion must be made promptly, generally before the return date of the subpoena” (Matter of Brunswick Hosp. Ctr. v Hynes, 52 NY2d 333, 339 [1981]). However, Brunswick is not analogous to this case: in Brunswick, the petitioner sought to quash two grand jury subpoenas, returnable in court, after he had already complied with both subpoenas (Matter of Brunswick, 52 NY2d at 337). Both subpoenas here are “non-judicial” subpoenas, not returnable in court, and as such are subject to CPLR 2304.
Merits
JCOPE has established the requisite foundation for issuing the 2015 and 2016 subpoenas. Campaign has not established that any of the documents it has withheld are privileged or that the 2016 subpoena is unduly intrusive, burdensome, or persecutory. But because Campaign has raised a question of fact requiring judicial review whether the attorney work product privilege applies to four documents, Campaign must submit those documents for in camera review. Campaign must disclose all other disputed documents to JCOPE.
The agency seeking to enforce a non-judicial subpoena must show that it has the authority to issue the subpoena, that the materials sought “bear a reasonable relation to the subject matter under investigation and the public purpose to be served,” and a factual basis for the subpoena (Myerson v Lentini Bros. Moving & Stor. Co., 33 NY2d 250, 256 [1973]; see Matter of Parkhouse v Stringer, 12 NY3d 660, 666 [2009]; Hyatt v State of Cal. Franchise Tax Bd., 105 AD3d 186, 202 [2d Dept 2013]). Regarding the third element, “the showing required will depend on the breadth of the subpoena and the status of the investigation at the time the subpoena issues,” and “may amount to less than ‘probable cause’ to believe a violation of law will be disclosed” (see Myerson, 33 NY2d at 256-257; Matter of Hogan v Cuomo, 67 AD3d 1144, 1146 [3d Dept 2009]).
Under Executive Law § 94, JCOPE “shall have and exercise the powers and duties set forth in this section with respect to . . . lobbyists and the clients of lobbyists as such terms are defined in article one-A of the legislative law” (Executive Law § 94 [1]). JCOPE has the power to “administer oaths or af *989 firmations, subpoena witnesses, compel their attendance and require the production of any books or records which it may deem relevant or material” in the process of “[c]onduct[ing] any investigation necessary to carry out the provisions of [Executive Law § 94]” (Executive Law § 94 [17] [c]).
As defined by Legislative Law § 1-c (c), “lobbying” includes “any attempt to influence:
“(i) the passage or defeat of any legislation or resolution by either house of the state legislature including but not limited to the introduction or intended introduction of such legislation or resolution or approval or disapproval of any legislation by the governor ...
“(v) any determination: (A) by a public official, or by a person or entity working in cooperation with a public official related to a governmental procurement . . .
“(vii) the passage or defeat of any local law, ordinance, resolution, or regulation by any municipality or subdivision thereof.”[2]
2015 Subpoena
The 2015 subpoena seeks 24 categories of documents. Campaign has produced most of the documents JCOPE seeks pursuant to the 2015 subpoena, but has objected to the production of documents sought under request 18 (“All communications between the Campaign and the Mayor of New York City in 2015”) and request 21 (“All documents relating to meetings scheduled and/or conducted in 2015 between the Campaign and the Mayor of New York City”). Campaign argues that these requests are overbroad and unduly burdensome. Campaign further argues that the documents sought by requests 18 and 21 are exempted from the definition of lobbying by Legislative *990 Law § 1-c (c) (E). Campaign also asserts that several documents sought under requests 18 and 21 are exempted from disclosure by the deliberative process, proprietary trade secret, attorney-client, attorney work product, and common interest privileges.
JCOPE’s Requests 18 and 21 are Not Improper
JCOPE has shown that it has the authority to investigate and issue subpoenas, that the documents it seeks are reasonably related to the subject of its investigation, and that a factual basis supports the subpoena. Executive Law § 94 confers upon JCOPE the authority to investigate whether an organization has improperly failed to register as a lobbyist and to issue subpoenas in furtherance of its investigation. And requests 18 and 21 bear a reasonable relation to JCOPE’s investigation, given that they seek communications and records of meetings between Campaign and the Mayor. The Mayor is a public official. Any attempt by Campaign to influence the Mayor may have constituted lobbying (see Legislative Law § 1-c [c] [v]). Campaign’s prior lobbying activities in 2014 and admittedly close relationship with the Mayor provide an ample factual basis to support requests 18 and 21 of the 2015 subpoena. Thus the requests for documents regarding meetings and communications with the Mayor in the 2015 subpoena were lawful.
The court rejects the argument that, because Campaign interprets the subject matter of the documents subpoenaed under requests 18 and 21 to fall outside the definition of lobbying, JCOPE lacks authority to issue those requests. Campaign’s reasoning in this regard is circular. It insists that, because it asserts that it did not lobby the Mayor, but only advised him, JCOPE is precluded from obtaining communications between the Mayor and Campaign. It may be that the documents in question do not show any lobbying activity. But, having laid a proper foundation, JCOPE is entitled to review them to make its own determination (see Executive Law § 94 [17] [c]; cf. Matter of Nicholson v State Commn. on Jud. Conduct, 50 NY2d 597, 611 [1980] [merits of judicial campaign misconduct inquiry not before Court in proceeding challenging agency’s authority to continue inquiry]).
Campaign’s Asserted Privileges
In addition to its overarching argument that the communications contained in documents it withheld do not meet the definition of lobbying, Campaign asserts a number of privileges. *991 “[T]he burden of establishing any right to protection is on the party asserting it; the protection claimed must be narrowly construed; and its application must be consistent with the purposes underlying the immunity” (Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d 371, 377 [1991]). Campaign has not established that any of the documents it seeks to protect are privileged. However, Campaign must submit four documents for in camera review, as Campaign has raised a question of fact as to whether the attorney work product privilege applies to those documents.
The Deliberative Process Privilege
Campaign attempts to shield 41 documents with the deliberative process privilege. But, because it is not a governmental agency, it does not have the right to assert the deliberative process privilege.
The deliberative process privilege is a common-law privilege that has been codified as an exception to the New York Freedom of Information Law (FOIL), which itself was modeled after the Federal Freedom of Information Act (In re World Trade Ctr. Disaster Site Litig., 2009 WL 4722250, *2-3, 2009 US Dist LEXIS 114910, *4-8 [SD NY, Dec. 9, 2009]). As codified, the privilege shields from FOIL disclosure interagency or intra-agency materials that are prepared to assist a government agency’s substantive decision-making process (Public Officers Law § 87 [2] [g]). The privilege has also been applied to subpoenas to protect documents containing “advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated” for the purpose of “enhanc[ing] the quality of agency decisions, by protecting open and frank discussion among those who make them within the Government” (In re World Trade Ctr. Disaster Site Litig., 2009 WL 4722250, *2, 2009 US Dist LEXIS 114910, *7-8 [SD NY, Dec. 9, 2009] [internal quotation marks omitted]).
Although the language of FOIL only protects interagency and intra-agency materials, the Court of Appeals has extended the privilege to materials prepared for a government agency, at its request, “by an outside consultant” (Matter of Xerox Corp. v Town of Webster, 65 NY2d 131, 131-132 [1985]). Where a governmental agency seeks to privilege information provided by an outside consultant, the outside consultant should not be representing its own interest, or the interest of its other clients, when it provided its opinion to the governmental agency (Mat *992 ter of Town of Waterford v New York State Dept. of Envtl. Conservation, 18 NY3d 652, 658 [2012]).
Because the privilege protects the deliberative processes of the government agency it affects, it must be invoked by that agency, not the private entity acting on the agency’s behalf. According to the United States District Court for the Southern District of New York, “[g]overnmental privilege must ordinarily be invoked by a department head or other responsible agency official, after a personal review of the documents, in an affidavit stating a factual basis for the claim of injury to legitimate government interests flowing from disclosure” (Grossman v Schwarz, 125 FRD 376, 381 [SD NY 1989]; see In re World Trade Ctr. Disaster Site Litig., 2009 WL 4722250, 2009 US Dist LEXIS 114910). The party invoking the privilege must demonstrate “what interests would be harmed, how disclosure under a protective order would cause the harm, and how much harm there would be” (Grossman, 125 FRD at 381 [internal quotation marks omitted]). Once the governmental agency has demonstrated the applicability of the privilege, the court must balance the agency’s interests against the interests mitigating in favor of disclosure (id. at 382, citing In re Franklin Natl. Bank Sec. Litig., 478 F Supp 577 [ED NY 1979] [listing balancing factors]).
Here, Emma Wolfe, Director of the Mayor’s Office of Intergovernmental Affairs, has submitted an affidavit in support of Campaign’s position. Ms. Wolfe therein expresses a belief that the documents withheld by Campaign “are entitled to protection under the deliberative process privilege.” As JCOPE points out, Ms. Wolfe never expressly invokes the privilege or asserts that the Mayor has invested her with authority to invoke it. Nor has the Mayor’s Office attempted to intervene in order to protect the documents in question, despite having notice, as evidenced by the Wolfe affidavit.
Assuming without deciding that the Mayor’s Office has properly invoked the deliberative process privilege (see id.), it has fallen well short of demonstrating that the documents in question must be protected. For each class of documents — a draft of a public opinion survey, discussions of focus group methodology, survey results, and discussions of political strategy — Ms. Wolfe offers the conclusory justification that disclosure will chill deliberations. She does not explain how the harm will occur or the scope of the harm (see id. at 381).
Applying the Franklin Natl. Bank balancing test, the factors in favor of disclosure outweigh the interests asserted in Ms. *993 Wolfe’s affidavit and its vague descriptions of the documents. Ms. Wolfe’s concern that the Mayor’s deliberation will be chilled might be more compelling in the context of FOIL or a discovery subpoena for private litigation, but here JCOPE is statutorily obliged, under threat of misdemeanor prosecution, to keep confidential the documents it obtains in its investigation (see Executive Law § 94 [9-a] [b], [c]). Campaign’s communications with the Mayor are directly relevant to JCOPE’s investigation into whether it lobbied without registering. If JCOPE is unable to view communications between the Mayor and a company that recently acted as a lobbyist with regard to issues affecting New York City and the Mayor, it is hard to see how JCOPE can fulfill its statutory obligations. So, to the extent the deliberative process privilege is applicable to the documents in question, the governmental interest in viewing them would outweigh the governmental interest in protecting them (see Grossman, 125 FRD at 382-385). Accordingly, the court rejects Campaign’s reliance on the deliberative process privilege to shield subpoenaed documents.
Proprietary Trade Secrets
Campaign has not met its burden of establishing that 19 documents are privileged as trade secrets. Generally, proprietary trade secrets will be shielded from disclosure “except to the extent that [disclosure] appears to be indispensable for ascertainment of the truth” (Drake v Herrman, 261 NY 414, 418 [1933]). A proprietary trade secret is “ ‘any formula, pattern, device or compilation of information which is used in one’s business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it’ ” (Ashland Mgt. v Janien, 82 NY2d 395, 407 [1993], quoting Restatement [First] of Torts § 757, Comment b). A conclusory statement in an attorney’s affidavit that a document contains trade secrets is insufficient to meet the burden required to assert the privilege (see New York State Businessmen’s Group v Dalton, 154 AD2d 801, 801 [3d Dept 1989]).
Campaign has not made any showing of how the information contained in the documents over which it asserts the privilege gives it, a not-for-profit partner of the Mayor’s Office, a competitive advantage. Campaign told JCOPE in its December 22, 2015 letter that the documents over which it asserted the privilege contained “formulation of plans for surveys and other research,” created at the Mayor’s request. This unsworn, unsupported, and unelaborated assertion is insufficient to meet *994 Campaign’s burden (see id.). Therefore, Campaign must disclose all documents it has withheld as containing proprietary-trade secrets.
Attorney-Client Privilege
Of the eight documents over which Campaign asserts the attorney-client privilege, six are not protected because a third party was present at the communication. And Campaign has not demonstrated that the communications in the remaining two were predominantly of a legal character.
The attorney-client privilege prevents confidential communications made between the attorney and the client in the course of professional employment from being disclosed (CPLR 4503 [a] [1]). However, due to the “obvious tension” between full disclosure and protecting attorney-client communications, the privilege must be narrowly construed (CPLR 3101 [a]; Ambac Assur. Corp. v Countrywide Home Loans, Inc., 27 NY3d 616 [2016]).
“The party asserting the privilege bears the burden of establishing its entitlement to protection by showing [1] that the communication at issue was between an attorney and a client for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship, [2] that the communication is predominantly of a legal character, [3] that the communication was confidential and [4] that the privilege was not waived” (id. at 624 [internal quotation marks omitted]).
A communication is not confidential if it is “made in the presence of third parties, whose presence is known to the client” (id. [internal quotation marks and brackets omitted]). Further, “[t]he privilege is . . . limited to communications — not underlying facts” (Spectrum Sys. Intl. Corp., 78 NY2d at 377).
The privilege log shows that documents C41NY00251, C41NY00253, C41NY00259, C41NY01397, C41NY01418, and C41NY01436 were shared with third parties such as Hilltop employees and representatives of the Mayor’s Office, and therefore are not confidential (see Ambac, 27 NY3d 616, 630). For documents C41NY00249 and C41NY00250, while Campaign has asserted that they were made for the purpose of rendering legal advice, and while the communication appears to have been between attorney and client, Campaign has made no attempt to demonstrate that the communications were predominantly of a legal character (see Rossi v Blue Cross & *995 Blue Shield of Greater N.Y., 73 NY2d 588, 593 [1989]). Campaign’s privilege log simply identifies C41NY00249 as “Bill Hyers email chain” and its subject matter as “To schedule phone call.” The log identifies C41NY00250 as “Laurence Laufer notes of call with Bill Hyers,” but does not describe subject matter at all. In sum, Campaign has not demonstrated that attorney-client privilege applies to any of the documents it has withheld.
Attorney Work Product
Likewise, Campaign has not met its burden of demonstrating that the eight documents over which it has asserted the attorney work product doctrine are exempt from disclosure. Four of the documents appear, even from the scant descriptive information provided by Campaign, to fall outside the ambit of the privilege. For four of the documents, the court will conduct an in camera review to determine whether the privilege applies.
The attorney work product doctrine shields the work product of an attorney from disclosure (CPLR 3101 [c]). The party asserting the doctrine has “the burden of demonstrating that particular items are exempt or immune from disclosure . . . ; ‘the mere assertion that items constitute attorney’s work product . . . will not suffice’ ” (Salzer v Farm Family Life Ins. Co., 280 AD2d 844, 845-846 [3d Dept 2001] [citations omitted], quoting Graf v Aldrich, 94 AD2d 823, 824 [3d Dept 1983]). The doctrine is “narrowly construed” and includes “only materials prepared by an attorney, acting as an attorney, which contain his analysis and trial strategy” (Graf, 94 AD2d at 824). Thus, the doctrine does not shield “materials . . . that could have been prepared by a layperson” from disclosure (Salzer, 280 AD2d at 846).
Campaign has merely asserted that documents C41NY00249, C41NY00250, C41NY00251, C41NY00253, C41NY00259, C41NY01397, C41NY01418, and C41NY01436 contain attorney work product and listed the subject matter of the documents. It has made no attempt to demonstrate that they contain analysis and trial strategy that could only be prepared by an attorney. Of those, documents C41NY00249, C41NY00250, C41NY00251, and C41NY00253 are not privileged. A layperson can “schedule [a] phone call,” discuss “The Progressive Agenda,” and create or discuss a “Calendar of Filings.”
On the other hand, four of the documents in question here appear to relate to legal issues, suggesting that their creation *996 required skills not possessed by laypeople: C41NY00259 (“JCOPE lobbyist registration and reporting”), C41NY01397 (“Legal memo on New York lobbying law”), C41NY01418 (“Legal guidance outline”), and C41NY01436 (“Draft legal memo”). Accordingly, Campaign must submit these documents to the court for in camera review to determine whether they are privileged.
Common Interest Doctrine
Campaign cannot use the common interest doctrine to shield from disclosure any of the documents at issue. The common interest doctrine extends attorney-client privilege in the presence of a third party where “attorney-client communications . . . are revealed to one another for the purpose of furthering a common legal interest,” but it is limited to “[disclosure . . . between . . . persons who reasonably anticipate that they will become colitigants, because such disclosures are deemed necessary to mount a common claim or defense” (Ambac, 27 NY3d at 625, 628). The common interest must be “a legal interest common to the client and the third party,” and “must be identical (or nearly identical), as opposed to merely similar” (Hyatt, 105 AD3d at 205). Further, “any such communication must also relate to litigation, either pending or anticipated, in order for the exception to apply” because “[t]he difficulty of defining ‘common legal interests’ outside the context of litigation could result in the loss of evidence of a wide range of communications between parties who assert common legal interests but who really have only nonlegal or exclusively business interests to protect” (Ambac, 27 NY3d at 620, 629).
Here, documents C41NY01418 and C41NY01423 were shared with third parties from outside consultants and thus were never confidential. Document C41NY00251 was made on March 4, 2015, before JCOPE began its investigation, when Campaign therefore did not have reason to anticipate litigation. And although documents C41NY01421 and C41NY01449 were made after JCOPE began its investigation, Campaign does not assert that they were prepared in anticipation of litigation. The vague subject matter descriptions (“Mayor’s office summary of legal vetting” and “Draft legal memo on issue advocacy”) do not constitute a sufficient showing that they relate to “pending or reasonably anticipated litigation” (see Ambac, 27 NY3d at 628-630). Therefore, Campaign has not met its burden of demonstrating that any documents are protected by the common interest privilege.
*997 In sum, regarding the 2015 subpoena, JCOPE has demonstrated that it had the authority to issue the subpoena, the requests therein are reasonably related to its investigation, and an adequate factual basis supports the requests. Campaign has not shown that any of the privileges it asserts shield the documents in question from disclosure. But, because Campaign has raised a question of fact whether four of the contested documents contain attorney work product, Campaign must submit those documents to the court for in camera review.
2016 Subpoena
JCOPE has demonstrated its authority pursuant to Executive Law § 94 to investigate and issue the 2016 subpoena, the relevancy of documents from 2014 and 2016 to its investigation, and that a factual basis supports the subpoena. Therefore Campaign must comply with the 2016 subpoena in substantial part. However, because JCOPE has not met its burden with respect to documents it requests from 2013, Campaign’s motion to quash is granted in part.
On April 22, 2016, JCOPE issued a second subpoena duces tecum, which sought all of Campaign’s documents relating to expenses, income, and correspondence sent in response to donations received during the time period from November 5, 2013 to the date of compliance. Campaign has refused to comply at all with the 2016 subpoena, claiming that JCOPE has no authority to continue “fishing in otherwise apparently calm waters in the mere hope that some lead or indicia of possible wrongdoing will be uncovered” (Matter of Horn Constr. Co. v Fraiman, 34 AD2d 131, 133 [1st Dept 1970], affd on op below 29 NY2d 559 [1971]).
As discussed above, JCOPE need only demonstrate “authority, relevancy, and some basis for inquisitorial action” (Matter of New York Temporary State Commn. on Lobbying v Crane, 49 AD3d 1066, 1067 [3d Dept 2008]). An administrative subpoena will be quashed “only where the futility of the process to uncover anything legitimate is inevitable or obvious or where the information sought is utterly irrevelant to any proper inquiry” (id. [internal alterations and citation omitted]).
Here, the 2016 subpoena demands that Campaign produce “all documents relating to expenses of the Campaign . . . , income of the Campaign . . . , [and] correspondence sent in response to donations received,” beginning on November 5, 2013, up to the date of compliance. Manifestly, Campaign’s expenses could provide evidence of lobbying. The identity of its *998 donors, any statements of intent by the donors, and the amounts donated could likewise provide circumstantial evidence of lobbying and open new avenues of investigation. And its correspondence responding to donations could contain admissions or other evidence of lobbying. Thus, all three categories are reasonably related to the stated subject of JCOPE’s investigation: whether Campaign improperly failed to register as a lobbyist in 2015.
JCOPE has also established a factual basis for the 2016 subpoena by appending several documents to Pei Pei Cheng’s May 23, 2016 affidavit. One such document is an information sheet that appears to be designed to encourage donations. It trumpets Campaign’s success in achieving universal prekindergarten and outlines its “Next Phase: Supporting Affordable Housing in New York City.” Also attached is an undated agreement between Campaign and Red Horse Strategies, whereby Red Horse agreed to, among other things, “[d]evelop political support for [Campaign’s] public policy objectives among local leaders,” and “[establish and build relationships with local party apparatus.” The fact that the agreement expressly states that Red Horse would not engage in lobbying is not dispositive, as the contract suggests activity that is at least related to lobbying. Similarly, AKPD Message and Media agreed in April 2015 to, among other things, advise Campaign on “political bases to touch.”
JCOPE has also submitted multiple documents that show that Campaign was involved in grassroots campaigning during 2015. Campaign disputes that the activities described in the documents provided by JCOPE constitute lobbying (see Legislative Law § 1-c [c]; NY St Joint Commn on Pub Ethics Advisory Op No. 16-01 [2016]). The court, however, need not decide the question here, as the factual predicate provided by JCOPE is sufficient to support the 2016 subpoena (see Crane, 49 AD3d at 1067). Whether JCOPE has uncovered evidence that Campaign operated as an unregistered lobbyist — and the precise contours of the definition of “lobbying” — “may be the subject of judicial scrutiny if and when” JCOPE imposes a sanction on Campaign that Campaign duly challenges in court (Matter of Nicholson, 50 NY2d at 611).
Campaign argues that documents prior to 2015 and after 2016 cannot be relevant to JCOPE’s investigation into whether it engaged in lobbying activities in 2015 and that the 2016 subpoena is thus too broad. Yet expenditures, income, and cor *999 respondence from 2014 and 2016 could provide expressions of intent to lobby, admissions of lobbying, and circumstantial evidence of lobbying. For example, since we know that Campaign lobbied in 2014, if its expenditures and fundraising were substantially similar between 2014 and 2015, an inference could be drawn that it .continued to lobby. As such, documents from 2014 and 2016 are reasonably related to JCOPE’s investigation and the subpoena is not overbroad in that regard. The court agrees with Campaign, however, that documents from 2013 appear too attenuated from its 2015 activities to bear a reasonable relationship to JCOPE’s investigation.
Campaign further argues that, in order to justify the 2016 subpoena, JCOPE must make more of a showing than is required for a preliminary inquiry. Campaign relies largely on two cases. In Myerson v Lentini Bros. Moving & Stor. Co., the New York City Consumer Affairs Commissioner had issued a blunderbuss subpoena to a private company after its investigators were turned away when they showed up at the company’s offices to audit its books for a second time within a one-month period (33 NY2d 250, 252 [1973]). In support of the subpoena, the Commissioner offered only her bare allegation that she had received “numerous” complaints from consumers (id. at 259-260). The Court stated that, upon challenge to an investigatory subpoena, “[l]ess of a showing should be required for a preliminary or tentative inquiry, and more for one that might otherwise be causelessly broadened into an unlimited examination of the business affairs of an enterprise” (id. at 260). The Court found an insufficient basis to support the subpoena, and quashed the subpoena (id. at 260; accord Matter of New York City Dept. of Investigation v Passannante, 148 AD2d 101, 102 [1st Dept 1989] [motion to quash granted where administrative subpoena supported only by conclusory allegation of complaint]).
Similarly, in Matter of Horn Constr. Co. v Fraiman, the New York City Department of Investigation (DOI) commenced an investigation into allegations by a subcontractor that City inspectors had demanded bribes (34 AD2d 131 [1st Dept 1970]). DOI interviewed two of Horn’s employees “repeatedly and at length” and Horn produced all of its records of the job for which the subcontractor was hired (id. at 132). DOI then issued a subpoena duces tecum that ordered Horn, a major construction company, to produce all payment records for all jobs covering an approximately one-year period (id.). Consonant with Myer- *1000 son, the First Department reasoned that, when “a subpoena is issued after extensive examination of witnesses and documents,” the agency issuing the subpoena should “establish clearly the reasonable relationship of the relief sought to the objective proclaimed, or at least establish such basis that it may reasonably be concluded that its efforts would or reasonably might prove fruitful” (id. at 133). The Court held that “the disclosure sought is unreasonable by reason of its breadth in the absence of a showing of materiality and relevance” (id. at 134).
The theme underlying these decisions is that a government agency may not use its broad investigatory power to groundlessly harass, intimidate, or persecute (see also Matter of Parkhouse v Stringer, 12 NY3d 660, 665-668 [2009]). Campaign has seized on this theme to argue that it has been the subject of a dogged, unfounded, persecutory, fishing expedition, and that JCOPE must be told to leave it alone. But unlike the unsupported subpoenas in Myerson and Horn, JCOPE’s 2016 subpoena stands on a firm factual ground, as discussed above. In contrast to Horn, JCOPE does not appear to be “fishing in otherwise apparently calm waters” (Matter of Horn Constr. Co., 34 AD2d at 133). Notwithstanding Campaign’s complaints about the breadth of the subpoena, it has not made any showing compliance would present to Campaign an undue burden of time or money. In sum, the record before the court does not indicate that the challenged subpoenas constitute harassment or impermissible “fishing” (see Myerson, 33 NY2d at 256; Matter of Horn Constr. Co., 34 AD2d at 133).
For the reasons stated above, JCOPE has laid a proper foundation to issue the 2015 and 2016 subpoenas, with the exception that it has not shown that the 2013 documents sought by the 2016 subpoena are relevant to its investigation. Campaign has not demonstrated that any of the subpoenaed documents are privileged or otherwise exempt from disclosure, with the exception of four documents that it must submit to the court for in camera review. Accordingly, it is ordered that the motion of the Joint Commission on Public Ethics to compel Campaign for One New York to comply with the subpoena duces tecum issued in 2015 is granted, except that Campaign shall produce documents C41NY00259, C41NY01418, C41NY01423, and C41NY01436 for in camera review; it is further ordered that the motion of the Joint Commission on Public Ethics to compel Campaign for One New York to comply *1001 with the subpoena duces tecum issued in 2016 is granted, except that Campaign need not produce documents from 2013; it is further ordered that the cross motion of Campaign for One New York for a protective order regarding the 2015 subpoena duces tecum is denied, except that Campaign shall produce documents C41NY00259, C41NY01418, C41NY01423, and C41NY01436 for in camera review; it is further ordered that the cross motion of Campaign for One New York to quash the subpoena duces tecum issued in 2016 is denied, except that Campaign need not produce documents from 2013.

. Executive Law § 94 (former [13]) required JCOPE to determine whether a substantial basis existed to commence a full investigation within 45 days of initiating the preliminary investigation.

. In January 2016, JCOPE issued Advisory Opinion 16-01, which affirmed prior advisory opinions that stated that certain indirect, grassroots attempts to influence pending legislation constituted lobbying. JCOPE also extended its interpretation of the definition:
“[a] grassroots communication constitutes lobbying if it:
“1. References, suggests, or otherwise implicates an activity covered by Lobbying Act Section l-c(c).
“2. Takes a clear position on the issue in question; and
“3. Is an attempt to influence a public official through a call to action, i.e., solicits or exhorts the public, or a segment of the public, to contact (a) public official(s)” (NY St Joint Commn on Pub Ethics Advisory Op No. 16-01 at 2 [2016]).