*620 OPINION OF THE COURT
Pigott, J.
This discovery dispute involves certain attorney-client communications that defendant Bank of America Corporation and defendant Countrywide Financial Corporation shared when the two entities were in the process of merging. Generally, communications between an attorney and a client that are made in the presence of or subsequently disclosed to third parties are not protected by the attorney-client privilege. Under the common interest doctrine, however, an attorney-client communication that is disclosed to a third party remains privileged if the third party shares a common legal interest with the client who made the communication and the communication is made in furtherance of that common legal interest. We hold today, as the courts in New York have held for over two decades, that any such communication must also relate to litigation, either pending or anticipated, in order for the exception to apply.
I.
Plaintiff Ambac Assurance Corporation is a monoline insurer that guaranteed payments on certain residential mortgage-backed securities issued by defendant Countrywide Home Loans, Inc., a wholly-owned subsidiary of Countrywide Financial Corporation (referred to collectively in this appeal as Countrywide). When the mortgage-backed securities that Am-bac insured failed during the recent financial crisis, Ambac commenced this action against Countrywide in Supreme Court alleging that Countrywide breached contractual representa *621 tions, fraudulently misrepresented the quality of the loans and fraudulently induced Ambac to guaranty them.
Ambac named Bank of America as a defendant in the action, based on its merger with Countrywide. The merger began to take shape in 2007, as Countrywide faced increasing credit losses and negative expectations about its future performance. The two entities publicly announced a merger plan on January 11, 2008 and closed on July 1, 2008. As a result of the merger, Countrywide sold substantially all of its assets to Bank of America through a series of asset transfers, and Countrywide merged into a wholly-owned subsidiary of Bank of America called Red Oak Merger Corporation. Ambac alleged that, as a result of the merger, Bank of America became Countrywide’s successor-in-interest and alter ego and was responsible for Countrywide’s liabilities to Ambac in the underlying action for fraud.
Discovery ensued, and in November 2012, Ambac challenged Bank of America’s withholding of approximately 400 communications that took place between Bank of America and Countrywide after the signing of the merger plan in January 2008 but before the merger closed in July. Bank of America had listed the communications on a privilege log and claimed they were protected from disclosure by the attorney-client privilege because they pertained to a number of legal issues the two companies needed to resolve jointly in anticipation of the merger closing, such as filing disclosures, securing regulatory approvals, reviewing contractual obligations to third parties, maintaining employee benefit plans and obtaining legal advice on state and federal tax consequences. Although the parties were represented by separate counsel, the merger agreement directed them to share privileged information related to these pre-closing legal issues and purported to protect the information from outside disclosure. Bank of America argued that the merger agreement evidenced the parties’ shared legal interest in the merger’s “successful completion” as well as their commitment to confidentiality, and therefore shielded the relevant communications from discovery.
Ambac moved to compel production of those documents, arguing that the voluntary sharing of confidential material before the merger closed waived any attorney-client privilege that might have otherwise attached. According to Ambac, Bank of America and Countrywide waived the privilege because they were not affiliated entities at the time of disclosure and did not *622 share a common legal interest in litigation or anticipated litigation. Ambac further asserted that the allegedly privileged documents were relevant to its successor-in-interest and alter ego theories of liability and may have demonstrated that Bank of America structured the merger so as to conceal Countrywide’s fraud and leave creditors without recourse.
A Special Referee appointed to handle privilege disputes issued a report on Ambac’s motion and ordered the parties to review the remaining documents in accordance with its decision (2013 NY Slip Op 32568[U] [Sup Ct, NY County 2013]). The Referee explained that the exchange of privileged communications ordinarily constitutes a waiver of the attorney-client privilege and that the communications at issue would be entitled to protection only if Bank of America could establish an exception to waiver. The Referee discussed one such exception, the common interest doctrine, which permits a limited disclosure of confidential communications to parties who share a common legal (as opposed to business or commercial) interest in pending or reasonably anticipated litigation (id. at *7, citing Aetna Cas. & Sur. Co. v Certain Underwriters at Lloyd’s, London, 176 Misc 2d 605 [Sup Ct, NY County 1998], affd 263 AD2d 367 [1st Dept 1999]). The Referee concluded that “[i]f there is such litigation and a common legal interest then the common-interest doctrine comes into play. If there is not then the doctrine does not protect the document” (id. at *7). Having announced this standard, the Referee instructed the parties to review the withheld documents, update the privilege log and submit any documents that remained in dispute for in camera review (id. at *7).
Bank of America moved to vacate the Referee’s decision and order on the ground that its communications with Countrywide were protected by the attorney-client privilege even in the absence of pending or anticipated litigation. According to Bank of America, the items were privileged so long as they involved matters of a common legal interest between the parties — i.e., closing the merger — and were otherwise protected by the attorney-client privilege. Supreme Court denied the motion, holding that New York law “requires that there be a reasonable anticipation of litigation” in order for the common interest doctrine to apply (41 Misc 3d 1213[A], 2013 NY Slip Op 51673[U], *2 [Sup Ct, NY County 2013]).
Bank of America appealed, and the Appellate Division reversed, granted the motion to vacate and remanded for *623 further proceedings (124 AD3d 129 [1st Dept 2014]). Although the Court recognized that, historically, “New York courts have taken a narrow view of the common-interest [doctrine], holding that it applies only with respect to legal advice in pending or reasonably anticipated litigation,” it was unpersuaded by the reasoning of those courts and concluded that pending or reasonably anticipated litigation was no longer a necessary element of the exception (id. at 130). The Court observed that “when a single party seeks advice from counsel, the communication is privileged regardless of whether litigation is within anyone’s contemplation” but that, under Supreme Court’s formulation of the doctrine, “when two parties with a common legal interest seek advice from counsel together, the communication is not privileged unless litigation is within the parties’ contemplation” (id. at 135-136). The Appellate Division could not reconcile that distinction with the purposes underlying the attorney-client privilege and decided instead to follow the federal courts that have “overwhelmingly rejected [a litigation] requirement” (id. at 134 [citing cases from the Second, Third, Seventh and Federal Circuit Courts of Appeals]). The Appellate Division remanded the matter to the Special Referee to determine whether the communications fell within its reformulation of the rule. It subsequently granted Ambac leave to appeal to this Court, certifying the following question: “Was the order of this Court, which reversed the order of the Supreme Court, properly made?”
II.
A. The Attorney-Client Privilege
The attorney-client privilege shields from disclosure any confidential communications between an attorney and his or her client made for the purpose of obtaining or facilitating legal advice in the course of a professional relationship (see CPLR 4503 [a] [1]). The oldest among the common-law evidentiary privileges, the attorney-client privilege “fosters the open dialogue between lawyer and client that is deemed essential to effective representation” (Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d 371, 377 [1991]). “It exists to ensure that one seeking legal advice will be able to confide fully and freely in his attorney, secure in the knowledge that his confidences will not later be exposed to public view to his embarrassment or legal detriment” (Matter of Priest v Hennessy, 51 NY2d 62, 67-68 [1980]).
*624 Despite the social utility of the privilege, it is in “[o]bvious tension” with the policy of this State favoring liberal discovery (Spectrum, 78 NY2d at 376-377; see also CPLR 3101 [a] [1] [directing that there be “full disclosure of all matter material and necessary in the prosecution or defense of an action”]). Because the privilege shields from disclosure pertinent information and therefore “constitutes an ‘obstacle’ to the truth-finding process,” it must be narrowly construed (Matter of Jacqueline F., 47 NY2d 215, 219 [1979]; see Spectrum, 78 NY2d at 377). The party asserting the privilege bears the burden of establishing its entitlement to protection by showing that the communication at issue was between an attorney and a client “for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship,” that the communication is predominantly of a legal character, that the communication was confidential and that the privilege was not waived (Rossi v Blue Cross & Blue Shield of Greater N.Y., 73 NY2d 588, 593-594 [1989]).
The latter two elements — confidentiality and waiver — are of primary importance in this appeal. “Generally, communications made in the presence of third parties, whose presence is known to the [client], are not privileged from disclosure” because they are not deemed confidential (People v Harris, 57 NY2d 335, 343 [1982]; see also Baumann v Steingester, 213 NY 328, 333 [1915]). Similarly, a client waives the privilege if a communication is made in confidence but subsequently revealed to a third party (see People v Patrick, 182 NY 131, 175 [1905]). The rationale for these rules is to ensure that the privilege is “strictly confined within the narrowest possible limits consistent with the logic of its principle” (8 John Henry Wigmore, Evidence § 2291 at 554 [McNaughton rev 1961]). A lack of confidentiality and subsequent disclosure also destroy the privilege as a matter of fairness: “when [the privilege holder’s] conduct touches a certain point of disclosure, fairness requires that the privilege shall cease whether he intended that result or not” (id. § 2327 at 636).
As with any rule, there are exceptions. We have held, for example, that statements made to the agents or employees of the attorney or client, or through a hired interpreter, retain their confidential (and therefore, privileged) character, where the presence of such third parties is deemed necessary to enable the attorney-client communication and the client has a reasonable expectation of confidentiality (see People v Osorio, *625 75 NY2d 80, 84 [1989]). So, too, when one attorney represents multiple clients concerning a matter of common interest, any confidential communications exchanged among them are privileged against the outside world (see Wallace v Wallace, 216 NY 28, 35 [1915], citing Hurlburt v Hurlburt, 128 NY 420, 424 [1891]).
B. The Common Interest Exception
This case concerns a related, but distinct, exception to the general rule that the presence of a third party destroys any claim of privilege: where two or more clients separately retain counsel to advise them on matters of common legal interest, the common interest exception[1] allows them to shield from disclosure certain attorney-client communications that are revealed to one another for the purpose of furthering a common legal interest. The doctrine has its roots in criminal law and, as originally conceived, “allowed the attorneys of criminal co-defendants to share confidential information about defense strategies without waiving the privilege as against third parties” (In re Teleglobe Communications Corp., 493 F3d 345, 364 [3d Cir 2007]). The first reported case to recognize the exception permitted criminal attorneys to coordinate the strategies of their clients, who were under joint indictment for conspiracy to defraud an estate, and retain the privileged nature of their communications (see Chahoon v Commonwealth, 62 Va [21 Gratt] 822, 839-840 [1871]). The rationale for the exception was that the parties “had the same defen[s]e to make” and therefore “the counsel of each was in effect the counsel of all” (id. at 841-842).
Courts eventually replaced this “joint defense” doctrine, which applied to criminal codefendants, with a broader exception that also protected communications between parties to civil litigation. In Schmitt v Emery (211 Minn 547, 2 NW2d 413 [1942]), a privileged document was exchanged among counsel *626 for several codefendants in a civil action, in order to prepare objections to the document’s admission into evidence. The Minnesota Supreme Court held that “[w]here an attorney furnishes a copy of a document entrusted to him by his client to an attorney who is engaged in maintaining substantially the same cause on behalf of other parties in the same litigation,” the communication is protected from disclosure by the attorney-client privilege because it was “made not for the purpose of allowing unlimited publication and use, but in confidence, for the limited and restricted purpose to assist in asserting their common claims” (211 Minn at 554, 2 NW2d at 417). The Uniform Rules of Evidence adopted this formulation of the doctrine, protecting attorney-client communications “by the client or a representative of the client or the client’s lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein” (Uniform Rules Evid rule 502 [b] [3] [emphasis added]).[2]
Our Court first recognized the common interest doctrine in 1989 in People v Osorio (75 NY2d 80 [1989]). In that case, we considered whether a defendant who communicated with counsel in the presence of a separately represented codefend-ant in a pending criminal prosecution could prevent the co-defendant from testifying as to what he heard. The codefendant was at the time acting as an interpreter between the defendant and his attorney. Although we acknowledged that the attorney-client privilege would, ordinarily, protect communications between codefendants that are shared for the purpose of “mounting a common defense,” we ultimately held that it did not apply in that case because the defendant “was not planning a common defense” and therefore did not share a common legal interest with him (id. at 85). For support, we relied on two federal decisions that applied the common interest doctrine *627 to statements made between codefendants in furtherance of a joint trial strategy or defense: the court in United States v McPartlin held that such communications were privileged because they “were made in confidence to an attorney for a co-defendant for a common purpose related to both defenses” (595 F2d 1321, 1336 [7th Cir 1979]), and the court in Hunydee v United States applied the same reasoning to communications between the attorneys of persons who were “subject to possible indictment” (355 F2d 183, 185 [9th Cir 1965]).
After Osorio, New York courts applied the common interest doctrine in criminal as well as civil matters, to communications of both coplaintiffs and codefendants, but always in the context of pending or reasonably anticipated litigation. Indeed, until the First Department’s decision in this case, New York courts uniformly rejected efforts to expand the common interest doctrine to communications that do not concern pending or reasonably anticipated litigation (see e.g. Hyatt v State of Cal. Franchise Tax Bd., 105 AD3d 186 [2d Dept 2013]; Hudson Val. Mar., Inc. v Town of Cortlandt, 30 AD3d 377, 378 [2d Dept 2006]; Yemini v Goldberg, 12 Misc 3d 1141, 1144 [Sup Ct, Nassau County 2006]; Aetna Cas., 176 Misc 2d at 612-613; see also Allied Irish Banks, P.L.C. v Bank of Am., N.A., 252 FRD 163, 171 [SD NY 2008] [recognizing that New York limits the doctrine “to communications with respect to legal advice ‘in pending or reasonably anticipated litigation’ ”]; 4-160 Bender’s New York Evidence § 160.02 [6] [e] [2015] [stating that the common interest doctrine in New York is limited “to communication between counsel and parties with respect to legal advice in pending or reasonably anticipated litigation in which the joint consulting parties have a common legal interest”]; Wright & Graham § 5493 n 67 [2015 Supp] [observing that the doctrine does not apply in New York where clients did not fear litigation at the time the communication was made or disclosed]).[3]
*628 C. The Present Appeal
The question presently before us is whether to modify the existing requirement that shared communications be in furtherance of a common legal interest in pending or reasonably anticipated litigation in order to remain privileged from disclosure, by expanding the common interest doctrine to protect shared communications in furtherance of any common legal interest. We adhere to the litigation requirement that has historically existed in New York.
As an exception to the general rule that communications made in the presence of or to a third party are not protected by the attorney-client privilege, our current formulation of the common interest doctrine is limited to situations where the benefit and the necessity of shared communications are at their highest, and the potential for misuse is minimal. Disclosure is privileged between codefendants, coplaintiffs or persons who reasonably anticipate that they will become colitigants, because such disclosures are deemed necessary to mount a common claim or defense, at a time when parties are most likely to expect discovery requests and their legal interests are sufficiently aligned that “the counsel of each [i]s in effect the counsel of all” (Chahoon, 62 Va at 841-842). When two or more parties are engaged in or reasonably anticipate litigation in which they share a common legal interest, the threat of mandatory disclosure may chill the parties’ exchange of privileged information and therefore thwart any desire to coordinate legal strategy. In that situation, the common interest doctrine promotes candor that may otherwise have been inhibited.
The same cannot be said of clients who share a common legal interest in a commercial transaction or other common problem but do not reasonably anticipate litigation. Bank of America contends that highly regulated financial institutions constantly face a threat of litigation and that the protection of their shared communications is necessary to facilitate better legal representation, ensure compliance with the law and avoid litigation. But no evidence has been presented here that privileged communication-sharing outside the context of litigation is necessary to achieve those objectives. There is no evidence, for example, that mergers, licensing agreements and other complex *629 commercial transactions have not occurred in New York because of our State’s litigation limitation on the common interest doctrine; nor is there evidence that corporate clients will cease complying with the law. Rather, “when parties share attorney-client communications for planning purposes outside of the specter of anticipated litigation, such as when parties cooperate to strengthen or obtain patent protection . . . , it is more likely that [they] would have shared information even absent the privilege” (Melanie B. Leslie, The Costs of Confidentiality and the Purpose of Privilege, 2000 Wis L Rev 31, 68 [2000]).
The merger at the heart of this dispute provides the perfect example: Bank of America and Countrywide obtained regulatory approval and filed the requisite disclosures in anticipation of a closing merger, even when New York State courts had made clear that their joint communications would not remain privileged unless they were engaged in or anticipated litigation. Put simply, when businesses share a common interest in closing a complex transaction, their shared interest in the transaction’s completion is already an adequate incentive for exchanging information necessary to achieve that end. Defendants have not presented any evidence to suggest that a corporate crisis existed in New York over the last 20 years when our courts restricted the common interest doctrine to pending or anticipated litigation, and we doubt that one will occur as a result of our decision today.
In short, we do not perceive a need to extend the common interest doctrine to communications made in the absence of pending or anticipated litigation, and any benefits that may attend such an expansion of the doctrine are outweighed by the substantial loss of relevant evidence, as well as the potential for abuse. The difficulty of defining “common legal interests” outside the context of litigation could result in the loss of evidence of a wide range of communications between parties who assert common legal interests but who really have only nonlegal or exclusively business interests to protect. Even advocates of a more expansive approach admit that “in a non-litigation setting the danger is greater that the underlying communication will be for a commercial purpose rather than for securing legal advice” (James M. Fischer, The Attorney-Client Privilege Meets the Common Interest Arrangement: Protecting Confidences While Exchanging Information for Mutual Gain, 16 Rev Litig 631, 642 [1997]). At least one com *630 mentator has also observed that “[t]he greatest push to expand the common interest privilege comes from corporate attorneys representing multiple clients often in an antitrust context,” and that it is in precisely this context “that the potential for abuse is greatest” (Edna S. Epstein, The Attorney-Client Privilege and the Work-Product Doctrine 277 [5th ed 2007]).
Indeed, Ambac argues that the very communications Bank of America withheld from disclosure would have revealed that the merging entities structured their transaction to conceal Countrywide’s fraudulent dealings and leave potential victims without recourse. Defendants and amici respond that there is no evidence of actual abuse in this case or in jurisdictions that have done away with a litigation requirement, but the potential for abuse is sufficiently great, and the accompanying benefits so few, that expansion is not warranted.
Bank of America’s remaining counterarguments do not persuade us to the contrary. First, it contends that we should not limit the common interest doctrine to pending or anticipated litigation when the attorney-client privilege from which the doctrine derives is not so limited. While it is true that the attorney-client privilege is not tied to the contemplation of litigation, the common interest doctrine does not need to be coextensive with the privilege because the doctrine itself is not an evidentiary privilege or an independent basis for the attorney-client privilege (see In re Megan-Racine Assoc., Inc., 189 BR 562, 573 n 8 [ND NY 1995] [observing that it is not necessary for the common interest doctrine to conform exactly with the purposes of the attorney-client privilege]). Rather, it limits the circumstances under which attorneys and clients can disseminate their communications to third parties without waiving the privilege, which our courts have reasonably construed to extend no further than communications related to pending or reasonably anticipated litigation.[4]
Second, Bank of America argues that our holding will create an anomalous result: clients who retain separate attorneys like defendants did here cannot protect their shared communications absent pending litigation but the same communications *631 made in the absence of litigation would be privileged if defendants had simply hired a single attorney to represent them in the merger. In the joint client or co-client setting, however, the clients indisputably share a complete alignment of interests in order for the attorney, ethically, to represent both parties. Accordingly, there is no question that the clients share a common identity and all joint communications will be in furtherance of that joint representation (see Grace M. Giesel, End the Experiment: The Attorney-Client Privilege Should Not Protect Communications in the Allied Lawyer Setting, 95 Marq L Rev 475, 535 [2011-2012]). Not so when clients retain separate attorneys to represent them on a matter of common interest. It is less likely that the positions of separately-represented clients will be aligned such that the attorney for one acts as the attorney for all (see Chahoon, 62 Va at 841-842), and the difficulty of determining whether separately-represented clients share a sufficiently common legal interest becomes even more obtuse outside the context of pending or anticipated litigation. Consequently, although a litigation limitation may not be necessary in a co-client setting where the fact of joint representation alone is often enough to establish a congruity of interests, it serves as a valuable safeguard against separately-represented parties who seek to shield exchanged communications from disclosure based on an alleged commonality of legal interests but who have only commercial or business interests to protect (see Megan-Racine, 189 BR at 573 [concluding that “although total identity of interest is not necessary, the parties asserting the privilege must have a common legal interest,” which “exists where the parties asserting the privilege were co-parties to litigation or reasonably believed that they could be made a party to litigation”]).
Finally, Bank of America urges us to follow the lead of the federal courts that have considered the question and extended the common interest exception to communications in furtherance of any common legal interest. To be sure, the Restatement and some federal courts of appeals have eliminated the common-law requirement that shared communications relate to pending or anticipated litigation (see Restatement [Third] of Law Governing Lawyers § 76 [1] [1997]; Teleglobe, 493 F3d at 364; United States v BDO Seidman, LLP, 492 F3d 806, 816 [7th Cir 2007]; In re Regents of Univ. of Cal., 101 F3d 1386, *632 1390-1391 [Fed Cir 1996]).[5] Like Proposed Rule 503 (b) (3) of the Federal Rules of Evidence — which was proposed in 1972 but never adopted — they allow “attorneys representing different clients with similar legal interests to share information without having to disclose it to others ... in civil and criminal litigation, and even in purely transactional contexts” (Teleglobe, 493 F3d at 364). In their view, “[ajpplying the common interest doctrine to the full range of communications otherwise protected by the attorney-client privilege encourages parties with a shared legal interest to seek legal assistance in order to meet legal requirements and to plan their conduct accordingly” (BDO Seidman, 492 F3d at 816 [internal quotation marks and citation omitted]).
But this expansion of the doctrine has not been uniformly received (see nn 2, 3, supra), and one treatise has observed that the common interest exception in these jurisdictions “is spreading like crabgrass to areas the drafters of the Rejected Rule could have hardly imagined” (Wright & Graham § 5493 n 91 [2015 Supp]).
We conclude that the policy reasons for keeping a litigation limitation on the common interest doctrine outweigh any purported justification for doing away with it, and therefore maintain the narrow construction that New York courts have traditionally applied.[6] Accordingly, the order of the Appellate Division should be reversed, with costs, the order of Supreme Court reinstated and the certified question answered in the negative.

. The exception has come to be known by many names: “common interest arrangement,” “common legal interest doctrine,” “joint litigant privilege,” “pooled information privilege,” “allied lawyer doctrine” and “allied litigant privilege,” among others. “The nomenclature is less important than a determination of the outer boundaries of the doctrine” (North Riv. Ins. Co. v Columbia Cas. Co., 1995 WL 5792, *2, 1995 US Dist LEXIS 53, *6 [SD NY 1995]). For purposes of this appeal, we use the phrase “common interest doctrine” or “common interest exception,” to make clear that the doctrine is not an independent privilege but an exception to the general rule that communications shared with third parties are not privileged.

. “This seems to have been the common law rule” (24 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 5493 at 467 [1986]), and at least 11 states have statutorily restricted the common interest doctrine to communications made in furtherance of ongoing litigation (see Ark Rules Evid rule 502 [b] [3]; Haw Rules Evid [Haw Rev Stat § 626-1] rule 503 [b] [3]; Ky Rules Evid rule 503 [b] [3]; Me Rules Evid rule 502 [b] [3]; Miss Rules Evid rule 502 [b] [3]; NH Rules Evid rule 502 [b] [3]; ND Rules Evid rule 502 [b] [3]; 12 Okla Stat § 2502 [B] [3]; SD Codified Laws § 19-19-502 [b] [3]; Tex Rules Evid rule 503 [b] [1] [C]; Vt Rules Evid rule 502 [b] [3]; but see Del Rules Evid rule 502 [b] [3] [permitting disclosure to an attorney or client “representing another in a matter of common interest”]).

. Other jurisdictions have embraced the same limitation through judicial decision (see e.g. In re Santa Fe Intl. Corp., 272 F3d 705, 711 [5th Cir 2001] [holding that “there must be a palpable threat of litigation at the time of the communication, rather than a mere awareness that one’s questionable conduct might some day result in litigation, before communications between one possible future co-defendant and another . . . could qualify for protection”]; O’Boyle v Borough of Longport, 218 NJ 168, 193, 198-199, 94 A3d 299, 314, 317 [2014]; Boyd v Comdata Network, Inc., 88 SW3d 203, 214-215 [Tenn Ct App 2002]; Gallagher v Office of Attorney Gen., 141 Md App 664, 676-677, *628 787 A2d 777, 784-785 [2001]; Hicks v Commonwealth, 17 Va App 535, 538, 439 SE2d 414, 416 [1994]; Visual Scene, Inc. v Pilkington Bros., pic., 508 So 2d 437, 440 [Fla Dist Ct App 1987]).

. We need not decide in this appeal what it means to share common legal interests in pending or anticipated litigation. We hold only that such litigation must be ongoing or reasonably anticipated, and the exchanged communication must relate to it, in order for the common interest exception to apply.

. Although the Second and Ninth Circuits have made clear that actual or ongoing litigation is not required, they do not appear to have expressly decided whether there must be a threat of litigation in order to invoke the exception (see Schaeffler v United States, 806 F3d 34, 40 [2d Cir 2015], citing United States v Schwimmer, 892 F2d 237 [2d Cir 1989]; United States v Zolin, 809 F2d 1411, 1417 [9th Cir 1987], affd in part and vacated in part on other grounds 491 US 554 [1989]).

. The legislature is free to consider the alternative arguments articulated by the dissent and to expand the common interest exception as other state legislatures have done (see e.g. Del Rules Evid rule 502 [b]).