Time Warner Cable Enters. LLC v Nokia of Am. Corp. (2024 NY Slip Op 50969(U))

[*1]

Time Warner Cable Enters. LLC v Nokia of Am. Corp.

2024 NY Slip Op 50969(U)

Decided on July 25, 2024

Supreme Court, New York County

Reed, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 25, 2024
Supreme Court, New York County

Time Warner Cable Enterprises LLC, Plaintiff,

against
Nokia of America Corporation, Defendant.

Index No. 650748/2022

Robert R. Reed, J.

In this case, plaintiff Time Warner Cable Enterprises LLC (Time Warner) claims that defendant Nokia of America Corporation (Nokia) is obligated to indemnify it for an $150 million jury award to non-party Sprint following a 2017 patent infringement trial. Nokia asserts that it is not obligated to defend or indemnify Time Warner because Nokia's products did not form the basis for Sprint's claims.
Pursuant to Rule 14 of the Commercial Division the parties have jointly filed several discovery correspondences identifying disputes regarding the disclosure of records and scope of witness testimony.
Generally speaking, and as applicable to discovery in every litigation, CPLR 3101 (a) provides that "[t]here shall be full disclosure of all matter material and necessary in the prosecution or defense of an action." The words, "'material and necessary,' are ... to be interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity. The test is one of usefulness and reason" (Allen v Crowell—Collier Publ. Co., 21 NY2d 403, 406 [1968]). The party seeking disclosure must demonstrate that "'the method of discovery sought will result in the disclosure of relevant evidence or is reasonably calculated to lead to the discovery of information bearing on the claims'" (Abrams v Pecile, 83 AD3d 527, 528 [1st Dept 2011], quoting Vyas v Campbell, 4 AD3d 417, 418 [2d Dept 2004]). It is well settled that the trial court has broad power to supervise disclosure (Daniels v City of New York, 291 AD2d 260, 260 [1st Dept 2002]).
This order will address the disputes identified in the discovery correspondence received by the court to date.
Rule 11-f Deposition Witness — "Topic 30"
The parties have taken depositions and dispute the scope of depositions regarding the reasonableness of Time Warner's defense costs for the Sprint Litigation. To date, Time Warner has purportedly refused to designate a witness regarding Time Warner's total costs for patent infringement litigations from 2011 to 2019, including costs associated with litigation that does not involve Sprint. According to Time Warner, the costs it incurred in other litigation are irrelevant to whether those incurred by Time Warner in connection with the Sprint Litigation are reasonable. Further, Time Warner asserts that the Sprint Litigation was novel, and not like the average patent litigation case. Nokia submits that its request for a witness on "Topic 30" [*2]regarding "other" patent litigation costs is relevant and reasonable and will allow Nokia to evaluate and compare the costs incurred by Time Warner to dispute their reasonableness. Neither party submits any case law in support of its position.
Generally, the reasonableness of any attorney fee or litigation cost is a fact-specific inquiry, which can encompass the assessment of a number of factors: time and labor, difficulty of issues involved, skill and effectiveness of counsel, and the customary fee charged for similar services (RMP Capital Corp. v Victory Jet, LLC 139 AD3d 836, 839 [2d Dept 2016]; JK Two LLC v Garber 171 AD3d 496 [1st Dept 2019]). "Customary fee" information is only but one relevant inquiry to the reasonableness of any costs incurred by a party.
Normally, "if there is any possibility that the information is sought in good faith for possible use as evidence-in-chief or in rebuttal or for cross-examination, it should be considered evidence material ... in the prosecution or defense" (Allen v Crowell—Collier Publ. Co., 21 NY2d at 407 [internal quotation marks and citation omitted]). Here, however, Nokia has failed to establish why patent litigation costs involving non-party entities (other than Sprint) are relevant to an assessment of the reasonableness of the Sprint Litigation expenses. It is not disputed that Time Warner has already disclosed discovery regarding defense costs and expenses from other intellectual property disputes between Sprint and Time Warner. Evidence has purportedly been exchanged which would permit Nokia to assess the resources expended in other patent infringement cases involving Time Warner and Sprint, and to compare those expenses to those incurred in the Sprint Litigation. Nokia has not cited any binding authority which would warrant an order compelling the disclosure of prior patent litigation costs involving unrelated entities, nor has Nokia identified how the disclosure of that information would be useful, avoid delay, and sharpen the issues to be decided in this action (CPLR 3101[a]; id at 406). Nokia's request for a "Topic 30" witness is denied.
Mediation Privilege
Time Warner demands that Nokia produce a corporate witness to testify regarding settlement proposals made by Nokia to defendants in other patent infringement litigations. Time Warner alleges that Nokia attended a mediation with Altice in September of 2023 regarding a patent infringement matter that involved the same patents as in the Sprint Litigation. Nokia purportedly refuses to disclose the substance of any settlement offers made by Nokia in the Altice Action. Time Warner submits this evidence is necessary to support Time Warner's claim that Nokia had requisite knowledge of the Sprint Litigation and argues that such evidence would support Time Warner's allegations that relate to Nokia's equipment. Time Warner cites caselaw from the Appellate Division, Fourth Department, and the Southern District of New York that supports disclosure of mediation materials irrespective of confidentiality provisions (Hauzinger v Hauzinger, 43AD3d 1289, 1290 [4th Dept 2007]; Gen. Electric Co. v APR Energy PLC, 2020 WL 2062523, at *7 [SDNY April 29, 2020]).
Nokia objects to disclosure of any settlement proposals made in the Altice Action. Nokia disputes the relevancy of this information and contests the possibility that evidence regarding Altice's 2018 litigation could provide sufficient awareness of Time Warner's 2011-2017 dispute. Nokia submits that the products involved in the Altice Action were distinct from those involved in the Sprint Litigation. Nokia relies upon the case of Five Star Electric v AJ Pegno Construction in support of its argument that settlement communications are not discoverable (2017 NY slip Op 31591 (U), 7 [Sup Ct NY July 27, 2017]).
The so-called "Settlement Privilege" arises out of CPLR §4547 that states:
"(e)vidence of (a) furnishing, or offering or promising to furnish, or (b) accepting, or offering or promising to accept, any valuable consideration in compromising or attempting to compromise a claim which is disputed as to either validity or amount of damages, shall be inadmissible as proof of liability for or invalidity of the claim or the amount of damages. Evidence of any conduct or statement made during compromise negotiations shall also be inadmissible."
(id.)
The provision is often cited in support of the argument that statements and information made during settlement negotiations are inadmissible and not discoverable. However, the provision further states that:
"(t)he provisions of this section shall not require the exclusion of any evidence, which is otherwise discoverable, solely because such evidence was presented during the course of compromise negotiations. Furthermore, the exclusion established by this section shall not limit the admissibility of such evidence when it is offered for another purpose . . . "
(id.).
Documents relating to settlement negotiations are, therefore, admissible for purposes other than proof of liability, and discoverable if they are material and necessary to the prosecution or defense of an action (id.; Am. Re-Ins. Co. v U.S. Fid. & Guar. Co., 19 AD3d 103, 104 (1st Dept 2005), citing, CPLR 3101[a]; Masterwear Corp. v Bernard, 298 AD2d 249, 250 [1st Dept 2002] and 3 AD3d 305 [2004]). Refusal to produce mediation materials on the grounds that the information is not discoverable is improper.
The question for this court is whether the information sought from the Altice mediation is relevant, material, and necessary to resolving a justiciable issue in this case. The words 'material and necessary' are liberally construed, but the discovery sought should also be useful and reduce delay (Allen v Crowell—Collier Publ. Co., 21 NY2d at 406).
Here, the court is not persuaded that mediation documents and information in the Altice Action are sufficiently relevant to this action to warrant an order compelling disclosure. It is unclear to this court how proposals for settlement of a claim involving Altice would somehow provide proof of awareness regarding the Sprint Litigation and the grounds for purported Nokia exposure. There is insufficient evidence that the equipment involved in this matter was substantially similar to the patent claims in the Altice Action, and no evidence that the liability posture of Nokia in the Altice Action would provide information reasonably calculated to lead to the discovery of admissible evidence here. The party seeking disclosure must demonstrate that the discovery sought will result in the disclosure of relevant evidence or is reasonably calculated to lead to the discovery of information bearing on the claims (Abrams v Pecile, 83 AD3d 527, 528 [1st Dept 2011]). Time Warner's request for a Nokia corporate deposition witness to testify regarding settlement proposals made by Nokia in the Altice Action, therefore, is denied.
Altice Correspondence
Time Warner further contests Nokia's discovery responses regarding the scope of its disclosure of Altice correspondence. According to Time Warner, Nokia has an ongoing discovery obligation to supplement its responses to include current information. Nokia disputes Time Warner's position that it has an ongoing obligation to supplement its responses beyond the [*3]date of the demand served.
Parties have an obligation to provide discovery responses regarding information within its possession, custody, or control at the time of the discovery response (Commonwealth of N. Mariana Islands v Canadian Imperial Bank of Com., 21 NY3d 55, 62—63 [2013]). CPLR 3101[h] governs when amendment or supplementation of responses is required. It states in pertinent part that " [a] party shall amend or supplement a response previously given to a request for disclosure promptly upon the party's thereafter obtaining information that the response was incorrect or incomplete when made, or that the response, though correct and complete when made, no longer is correct and complete, and the circumstances are such that a failure to amend or supplement the response would be materially misleading." Here, there is no evidence before this court, at this time, that Nokia somehow provided incomplete or incorrect information such that an order directing supplementation would be required. Any discovery response that provided information valid up to the time of disclosure is proper. Time Warner's request for an order directing supplementation or amendment of Nokia's discovery responses, on these grounds, is denied.
Cisco Presentation
Nokia alleges that, in preparation for the Sprint Litigation, Time Warner made a presentation to Cisco Systems Inc., a third-party product supplier who was a part of the joint defense group for the Sprint Litigation. This presentation was billed by Time Warner and the fees charged for the presentation are at issue in this litigation. Nokia seeks disclosure of information used in the presentation and believes that it will provide information regarding the extent to which Cisco and Nokia products were placed "at issue" by Sprint. Nokia also believes that the presentation will bear on the reasonableness of Time Warner's fees. Time Warner refuses production of the presentation by relying upon privilege exceptions to disclosure.
The "joint defense" and "common interest" privilege prohibits disclosure of statements made for a common purpose related to the defense of an action. It acts to bar a privilege waiver when parties are engaged in existing or impending litigation, or when the parties face common problems in pending or threatened civil litigation (330 Acquisition Co., LLC v Regency Savings Bank, F.S.B., 12 AD3d 214 [2004]). A total identity of interest among participates is not required under New York law (GUS Consulting GMBH v Chadbourne & Parke LLP, 20 Misc 3d 539, 542 [Sup. Ct. 2008] [" . . . the [common interest] privilege applies where an interlocking relationship or a limited common purpose necessitates disclosure to certain parties"]).
Here, it is unclear to this court what exactly the Cisco presentation involved. The parties did not provide any relevant information for this court to ascertain whether the parties present for the presentation were united in interest, how the information disclosed at the presentation involves relevant information not previously disclosed, or how communications during the presentation may be considered admissible statements against interest.
Generally, communications between attorney and client made in the presence of or subsequently disclosed to third parties are not protected by the attorney-client privilege, absent some exception. Under the common interest doctrine, attorney-client communications disclosed to a third party remain privileged if shared with parties of common legal interest in pending or anticipated litigation (Ambac v Countrywide, 27 NY3d 616, 620 [2016]).
It is undisputed that all persons present for the presentation were part of a "joint defense group." Therefore, it is this court's view that the common-interest privilege prohibits disclosure of the information sought by Nokia. The Sprint Litigation qualifies as an existing and pending [*4]litigation, and the Cisco presentation presumably qualifies as privileged information disclosed to a non-party. Here, Nokia does not disagree with Time Warner's assertion that the presentation was privileged, nor with the assertion that Cisco was united-in-interest with Time Warner at the time the communications were made.
Rather, Nokia's argument, in support of disclosure of the presentation, is that it was part of the joint defense group and is entitled to the information. This argument is unavailing. Nokia has consistently argued, by motion practice and court submissions, that it was not timely apprised of the Sprint Litigation sufficient to permit Nokia's involvement therein. This court is unclear how Nokia can at once argue that it was a party to the defense group while concurrently aruging that Time Warner's failure to timely apprise it of the litigation prohibited its defense or otherwise "denied Nokia opportunities to shape the issues of the case and present arguments and evidence" (NYSCEF doc. no. 69, para. 49). It is Time Warner's alleged conduct in preventing Nokia from participating in the defense of the Sprint Litigation that is at issue in this case. Nokia cannot, in this court's assessment, competently argue that it was part of the defense group yet prohibited from crafting a defense due to Time Warner's purported actions. Nokia's request for disclosure of the Cisco presentation is denied.
Subscriber Data
Time Warner claims that Nokia is liable for 54% of the Sprint verdict. This number is purportedly based on a Time Warner calculation involving the geographic distribution of Nokia's products in Time Warner's network. Nokia purportedly served Time Warner with demands for information regarding Time Warner's network subscriber data and was advised, through responses and deposition testimony, that no such data existed. It is alleged that, just prior to the close of fact discovery, Time Warner produced subscriber data responsive to Nokia's prior demands. Nokia now seeks a deposition of a Time Warner witness regarding the belated disclosure.
Time Warner submits that it has acted in good faith regarding its search for responsive documents and agreed to provide a witness to "the extent Time Warner intended to call at trial a witness to rely upon the seventeen (17) documents at issue" (Rule 14 submission by Daniel Reisner dated April 5, 2024).
Nokia is not obligated to wait for Time Warner to decide its trial witnesses or disclosures. To the extent Time Warner represented that it was not in possession of responsive information, and later disclosed information that was previously demanded, it shall be obligated to produce a witness regarding the subsequent disclosure (CPLR §3101; §3102 [a]). Nokia's request for a witness to testify regarding the Time Warner subscriber data reports is granted.
Contention Interrogatories
On February 5, 2024, Time Warner served its second set of contention interrogatories. Nokia served its answer on March 25, 2024. Time Warner challenges the sufficiency of Nokia's responses to interrogatories nos. 23-25.
Interrogatory no. 23 seeks "any other allocation methodologies or theories that Nokia asserts that TWCE should have applied . . . and . . . the percentage Nokia contends would have been a more appropriate allocation to Nokia on the assumption that Sprint's infringement allegations implicated the CMS and/or the IMS." Nokia's initial response purportedly stated that "that it does not owe indemnity to TWCE for the Sprint Litigation." Nokia's supplemental response clarifies its initial position and allegedly states: (1) that TWCE has not used a correct or [*5]reliable methodology to determine allocation and (2) that TWCE's new allocation theory is incorrect, unreliable, and unsupported.
Time Warner submits that Nokia's response to Interrogatory no. 23 prejudices Time Warner's ability to assess whether Nokia intends to assert any alternative method of allocation of indemnification.
Interrogatory no. 24 seeks Nokia's contention as to whether "the $33.8 million in defense costs that TWCE incurred in connection with the Sprint Litigation are unreasonable[,] . . . including but not limited to the defense costs that Nokia or any of its predecessors or any affiliate thereof has paid in support of its defense or the defense of a third-party in patent infringement cases other than the Sprint Litigation from 2011 to 2019." Nokia's response directed Time Warner to deposition testimony from Nokia's in-house counsel who testified that "the defense of a patent case through trial in its experience typically would result in total costs . . . of . . . 3 to $6 million." Nokia did not provide any additional information regarding its own defense costs in other third-party patent litigations. Nokia later supplemented its response with an objection to disclosure of "other lawsuit" information.
Interrogatory no. 25 asks Nokia several questions: (a) whether it is Nokia's contention that Nokia's HiQ or IMS was not used in combination with other equipment; (b) whether Nokia's HiQ or IMS was used in combination with other equipment but that the combined use was either (i) not approved or recommended by Nokia or (ii) the combination would not be a reasonable use to provide services to TWC's subscribers; or (c) whether Nokia's HiQ or IMS was not specifically contemplated and/or tested by Nokia or Time Warner to be used in combination with equipment from Cisco or other suppliers in TWC's legacy VoIP network. Nokia purportedly initially refused to respond to the interrogatory due to its form, and later supplemented its response by restating its position with respect to the applicability of Nokia products to the issues presented in the Sprint Litigation.
CPLR 3101(a) mandates full disclosure. It is a liberal standard (Madia v CBS Corp, 146 AD3d 424, 424—25 [NY App Div 1st Dept 2017]). Interrogatory requests are discovery tools that are subject to the same limits as all discovery. The questions may not infringe upon a privilege, substantially prejudice a party, be palpably irrelevant or unduly burdensome. In those circumstances, the court may direct that those questions should not be answered (White v Martins, 100 AD2d 805 [1st Dept 1984]["But there is always the possibility of questions that infringe upon a privilege, or that are so improper that to answer them will substantially prejudice the parties; or questions that may be so palpably and grossly irrelevant or unduly burdensome that they should not be answered.]).
In this court's view, Nokia's responses to interrogatories 23, 24 and 25 are sufficient. Specifically, with respect to interrogatory 23, Nokia has taken the position that no allocation of the Sprint verdict may be attributed to it. To the extent that the sufficiency of the allocation calculations made by Time Warner may be challenged, the grounds for that challenge are the proper subject of expert inquiry. It is unduly burdensome to require a party to set forth the grounds of its mathematical computations in opposition to Time Warner's allocation calculations in an interrogatory device. That information is more aptly pursued in expert discovery.
Regarding interrogatory no. 25, as aptly pointed out by Time Warner, multiple subpart interrogatories are disfavored and improper (see Misrahi Realty Corp v 18 Orchard Realty LLC, 2015 WL 1076027). Notwithstanding, it is this court's view that Nokia's response provided sufficient clarity as to Nokia's position regarding the use of its products in combination with [*6]other equipment. Further inquiry into the technical analysis shall be explored in expert discovery. Time Warner's request for amended interrogatory responses is denied.
Accordingly, it is hereby
ORDERED that Nokia's request to depose an additional Time Warner witness regarding the seventeen (17) documents exchanged reflecting Time Warner subscriber data and relied upon by Time Warner's expert witness Eric Carnick is granted; and it is further
ORDERED that the remaining Rule 14 disputes and requests for disclosure addressed in this order are otherwise denied; and it is further
ORDERED that the parties shall continue compliance with its stipulated expert disclosure as set forth in the parties' joint stipulation dated July 16, 2024 (NYSCEF doc. no. 159); and it is further 
ORDERED that the July 30, 2024 status conference is adjourned, and the parties shall appear for a virtual status conference on August 15, 2024 at 11:30 a.m.
DATE 07/25/2024
ROBERT R. REED, J.S.C.