Camelot Event Driven Fund, a Series of Frank Funds Trust v Morgan Stanley & Co. LLC (2024 NY Slip Op 51352(U))

[*1]

Camelot Event Driven Fund, a Series of Frank Funds Trust v Morgan Stanley & Co. LLC

2024 NY Slip Op 51352(U)

Decided on September 27, 2024

Supreme Court, New York County

Borrok, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 27, 2024
Supreme Court, New York County

Camelot Event Driven Fund, a Series of Frank Funds Trust, Plaintiff,

against
Morgan Stanley & Co. LLC, J.P. MORGAN SECURITIES, LLC, CITIGROUP GLOBAL MARKETS INC., GOLDMAN SACHS & CO. LLC, MIZUHO SECURITIES USA LLC, SIEBERT WILLIAMS SHANK & CO., LLC, BNP PARIBAS SECURITIES CORP., RBC CAPITAL MARKETS, LLC, U.S. BANCORP INVESTMENTS, INC., SMBC NIKKO SECURITIES AMERICA, INC.,TD SECURITIES (USA) LLC, SG AMERICAS SECURITIES, LLC, MUFG SECURITIES AMERICAS INC., CASTLEOAK SECURITIES, L.P., SAMUEL A. RAMIREZ & COMPANY, INC., ACADEMY SECURITIES, INC., R. SEELAUS & CO. LLC, WELLS FARGO SECURITIES, LLC, BNY MELLON CAPITAL MARKETS, LLC, INTESA SANPAOLO S.P.A., ICBC STANDARD BANK PLC, VIACOMCBS, INC., ROBERT M. BAKISH, KATHERINE GILL-CHAREST, SHARI E. REDSTONE, CANDACE K. BEINECKE, BARBARA M. BYRNE, LINDA M. GRIEGO, ROBERT N. KLIEGER, JUDITH A. MCHALE, RONALD L. NELSON, CHARLES E. PHILLIPS JR, SUSAN SCHUMAN, NICOLE SELIGMAN, FREDERICK O. TERRELL, Defendant.

Index No. 654959/2021

Plaintiffs by:
Glancy Prongay & Murray LLP, 745 Fifth Avenue Fifth Floor, New York, NY 10151
BERNSTEIN, LITOWITZ, BERGER & GROSSMANN, LLP, 1251 Avenue Of The Americas, New York, NY 10020
Defendants by:
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, One Manhattan West, New York, NY 10001

Andrew Borrok, J.

The following e-filed documents, listed by NYSCEF document number (Motion 019) 403, 404, 420, 429, 430, 431, 432, 433, 434, 435, 436, 437, 438, 439, 440, 441, 442, 443, 444, 445, 446, 447, 448, 449, 450, 451, 452, 453, 454, 455, 456, 457, 458, 459, 460, 461, 462, 463, 464, 465, 466, 467, 468, 469, 470, 471, 472, 473, 474, 475, 476, 477, 478, 479, 480, 481, 482, 483, 484, 545, 582, 583, 584, 585, 586, 587, 588, 589, 590, 591, 592, 593, 594, 595, 596, 597, 598, 599, 600, 601, 602, 603, 604, 605, 606, 607, 608, 609, 610, 611, 612, 613, 614, 630, 631, 632, 633, 634, 635, 636, 637, 638, 639, 640, 641, 642, 643, 644, 645, 646, 647, 648 were read on this [*2]motion to/for MISCELLANEOUS.
Upon the foregoing documents and upon further consideration following oral argument, the motion (Mtn. Seq. No. 19) is granted to the extent that set forth below. 
I. The 10b-5 Letter and the Due Diligence Defense
The attorney-client privilege shields from disclosure any confidential communications between an attorney and his or her client made for the purpose of obtaining or facilitating legal advice in the course of a professional relationship (Ambac Assur. Corp. v Countrywide Home Loans, Inc., 27 NY3d 616, 623 [2016]). 
As the defendants concede (NYSCEF Doc. No. 582, at 3), 10b-5 letters are not legal opinions and lawyers issuing 10b-5 letters cannot be held liable in a private right of action for "aiding and abetting" a violation of the Securities Act of 1933 (see, e.g., Lorenzo v Sec. and Exch. Commn., 587 US 71, 83 [2019] citing Janus Capital Group, Inc. v First Derivative Traders, 564 US 135 [2011]; 15 USCA § 78t). They are simply negative assurance letters indicating that, based on a discrete set of documents and both oral and written communications, that "nothing has come to [Hughes Hubbard & Reed LLP (HHR)'s] attention which gives us reason to believe that [the offering documents] contained or contains an untrue statement of a material fact or omitted or omits to state a material fact necessary in order to make the statements therein, in light of the circumstances under which they were made, not misleading" (NYSCEF Doc. No. 608; see American Bar Association, Negative Assurance in Securities Offerings [2008 Revision], 64 BUS. LAW. 395, 397 & n.18, 403 [2009] "Negative assurance is not a 'legal opinion.' Rather, it is a statement of belief, unique to securities offerings, based principally on counsel's participation in the process of preparing and discussing the registration statement or other offering document with the various participants in the process"). 
Because the 10b-5 letter is not legal advice or a legal opinion, the documents delivered to HHR (and both the written and oral communications with HHR) for the purpose of obtaining the 10b-5 letter were not delivered to or had with HHR for the purpose of obtaining or facilitating legal advice. They are thus not privileged and must be produced. Stated differently, the facts and communications that the defendants chose to have HHR review and rely on (or not rely) on for the purposes of the 10b-5 letter are validly within the purview of discovery and are not privileged because they are given for the purposes of a business document needed for the transaction and not for the purpose of obtaining a legal opinion or legal advice. As discussed below, this non-privileged information must be disclosed such that the 10b-5 letter can be properly understood by a fact finder. The plaintiff and the fact finder can not be deprived of this non-privileged information that HHR reviewed and did not review in indicating in the 10b-5 letter that based on the information provided, no further disclosure was required in the offering documents.
To the extent that the defendants argue that there is some quantum of facts or oral or written communications that were provided to HHR that are not for the purpose of the 10b-5 letter but have to do with obtaining or facilitating legal advice or opinion from HHR, those facts and communications might be privileged. However, the defendants have not defined the scope of the legal representation outside of the 10b-5 letter or bifurcated such documents and written and oral communications from the 10b-5 letter documents and written and oral [*3]communications.[FN1]
Thus, it is premature for the Court to rule on either that now or the plaintiff's argument as to any subject matter "at issue" waiver as to such documents or oral or written communications provided to HHR for the purpose of obtaining or facilitating legal advice which the 10b-5 letter documents and oral and written communications were not. 
To be clear, the plaintiff is entitled to fulsome discovery as to the non-privileged information given or not given by the underwriters for the 10b-5 analysis to HHR so that they can understand what the scope of the 10b-5 exercise was and what exactly HHR was provided (or not provided) in delivering what was a business document and not a legal opinion. For example, if the conflict at issue in this case was not provided to HHR, the plaintiffs are entitled to understand that and to tell that to a fact finder in addressing whether the defendants objectively can maintain their due diligence defense. In addition, without this information which the plaintiffs are otherwise entitled, the 10b-5 letter would be both sword and shield and hopelessly materially misleading, depriving the plaintiff of its ability to explain what the 10b-5 letter actually means.
For the avoidance of doubt, in the 10b-5 letter, HHR is not opining as to whether the diligence done by the underwriter defendants was adequate or reasonable or whether the underwriter defendants otherwise met their obligations under the 1933 Act. Nor is HHR either investigating or rendering a legal opinion about the truth of any of the due diligence information provided to them. To avoid confusion about any of that at trial, appropriate instruction can be given to the fact finder. However, the 10b-5 letter itself does not include the oral and written communications provided to HHR, so it simply is not clear what the significance of the 10b-5 letter is — meaning, among other things, it is not clear whether HHR was provided any information at all as to the conflict which is at issue in this case. This requires more than simple instruction and this is particularly important given the defendants' assertion as to their knowledge or lack thereof and their due diligence defense. As discussed above, the defendants have not yet developed which, if any, of the written and oral communications provided to HHR were provided for the purpose of obtaining the 10b-5 letter and which, if any, were provided for obtaining or facilitating legal advice.[FN2]

The defendants are not entitled however to a blanket privilege assertion as to all communications with HHR. Non-privileged facts that were in communications with HHR did not become privileged by communicating them to HHR or because they were communicated by HHR to the defendants. The plaintiff is entitled to know the existence or non-existence of those facts. The plaintiff is not however entitled to inquire of HHR as to why the underwriters chose to disclose or not disclose certain facts for the purposes of the 10b-5 letter. That information would appear to be privileged. The plaintiff is also entitled to know what if any information was withheld from HHR for the purposes of the 10b-5 letter.
To the extent addressed in the papers submitted by the parties both as to the 10b-5 letter [*4]and as to the balance of the trove of documents that are the subject of this motion, the Court notes that "at issue" waiver occurs where a party (i) "affirmatively place[s] the subject matter of its own privileged communication at issue in litigation," (ii) such that "invasion of the privilege is required to determine the validity of a claim or defense of the party asserting the privilege," and (iii) "application of the privilege would deprive the adversary of vital information" (Deutsche Bank Tr. Co. of Americas v Tri-Links Inv. Tr., 43 AD3d 56, 63 [1st Dept 2007]). Merely pleading a due diligence defense does not place "at issue" otherwise privileged information. At-issue waiver occurs only "when the party has asserted a claim or defense that he intends to prove by use ofthe privileged materials" (id. at 64 [emphasis added]). Where the parties asserting the privilege "have never indicated, and expressly deny having, any intention to use the privileged documents to prove any claim or defense in this action," there is no at issue waiver (Stock v Schnader Harrison Segal & Lewis LLP, 142 AD3d 210, 241 [1st Dept 2016]; see also Talos Capital Designated Activity Co. v 257 Church Holdings LLC, 215 AD3d 609, 610 [1st Dept 2023]). 
For the avoidance of doubt, and as discussed by the Special Master in In re Refco, Inc. Sec. Litig., 2010 WL 11882293, at *2 (SDNY Jan. 4, 2010), "[t]here is a difference between relying on counsel's work product and relying on 'advice of counsel,'" and the defendants may tell a fact finder that as part of their due diligence they retained HHR for the purpose of issuing the 10b-5 letter.[FN3]
This is factual and does not mean that the defendants are relying on "advice of counsel" as to their due diligence defense but it does not prevent discovery as to what the work product was or what it was based upon. 
However, the defendants have not adequately defined their due diligence defense. To wit, the defendants indicate that their defenses include:
Plaintiffs are not entitled to any recovery under the Securities Act from the Underwriter [*5]Defendants[;] acted at all times in good faith and had no knowledge, and were not reckless in not knowing, that any alleged statement or omission was false or misleading[;] . . . did not know, and in the exercise of reasonable care could not have known, of the alleged misstatements or omissions of fact in the Offering Materials[;] . . . conducted a reasonable and diligent investigation and had reasonable grounds to believe, and did believe, at the time the Offering Materials became effective, that the statements in the Offering Materials were true and that there were no misstatements of material fact or omissions of material fact that were required to be stated therein or necessary to make the statements therein not misleading[;] . . . [and] relied in good faith on the representations, reports, expert opinions, and advice of others.
(NYSCEF No. 253 at 117—23 [emphasis added]; NYSCEF No. 254 at 115—21 [emphasis added). It is not clear who is meant by "others" and whether the "advice" is business, legal or something else. The defendants can not merely say, as they do, that this does not necessarily mean the "advice of counsel."[FN4]
They must define the entire universe of "others" and what is meant by "advice" at this stage of the litigation so that appropriate discovery is not blocked and can ensue.
II. The branch of the motion seeking a redaction log is denied as moot
The plaintiffs moved to compel the Defendants to produce a redaction log or, in the case of Wells Fargo, indicate which redactions are made pursuant to the attorney-client privilege, and which are made for the bank examination privilege. Inasmuch as the Defendants indicate in their opposition that they have since provided such logs and information (see NYSCEF Doc. Nos. 595, 596), this branch of the plaintiffs' motion is denied as moot.
III. Communications Relating to FINRA Questionnaires
The defendants have withheld certain information in connection with their FINRA questionnaires which include information as to whether the defendants owned 10% of Viacom stock. They however have not yet established that this is proper. The questionnaires themselves as filled out have to be produced if they have not been. They are not privileged. Communications relating to the FINRA questionnaires require in camera review because it must be determined whether the communications include on their face legal advice or simply ministerial instruction or just facts. To the extent these documents and communications were used for the preparation of HHR's 10b-5 letter, disclosure is required.
IV. Goldman Sachs' Claw-backs
The defendants have moved to claw back the following documents: (i) a memorandum containing a timeline of the Archegos meltdown which Goldman Sachs prepared in anticipation with a meeting with Standard & Poor's, (ii) an email chain containing a timeline of Goldman [*6]Sachs' exposure to Archegos prepared in anticipation of a call with the Federal Reserve, and (iii) another email chain in which Goldman Sachs' senior management discussed how to respond to press inquiries. As discussed below, they have not however established their entitlement to claw-back. In camera review of certain of the documents is required.
(1) The Timeline Memorandum:
According to the plaintiffs, the defendants are attempting to claw-back a timeline memorandum of Archegos' meltdown that was prepared for a meeting with Standard and Poor's that is simply factual. According to the defendants, they are entitled to claw-back because (i) the timeline was prepared by a lawyer and (ii) it has legal advice. As an initial matter, the Court notes that facts do not get the benefit of the attorney-client privilege merely because they are prepared by a lawyer. However, if in fact, the memorandum contains legal advice, this information may be subject to the attorney-client privilege to the extent it was not communicated to Standard & Poor's. Thus, this too requires in camera review.
(2) Risk Management Assessment with Archegos:
The plaintiffs argue that the defendants are improperly seeking claw-back of a set of documents that contain risk management assessment related to Archegos that Goldman Sachs "planned to share with the Federal Reserve Board" (NYSCEF Doc. No. 582, at 21 [emphasis added]) which the plaintiffs indicate is purely factual. For their part, the defendants say that they are entitled to claw-back of these documents pursuant to the banking examination privilege because the risk assessment itself is protected as confidential supervisory information "created or obtained in furtherance of the [Federal Reserve] Board's supervisory, investigatory, or enforcement activities" (12 CFR 261.2). On the record before the Court, the defendants are not entitled to claw-back of these documents.
"[A]gency opinions and recommendations and banks' responses thereto" are protected from disclosure by a "qualified bank examination privilege," which "arises out of the practical need for openness and honesty between bank examiners and the banks they regulate, and is intended to protect the integrity of the regulatory process by privileging such communications" (In re LIBOR-Based Fin. Instruments Antitrust Litig., 2023 WL 2871090, at *7 [SDNY Apr. 10, 2023], quoting Sharkey v J.P. Morgan Chase & Co., 2013 WL 2254553, at *1 [SDNY May 22, 2013]). 
As the United States District Court for the Southern District of New York (Sweet, J.) in Sharkey indicated, the banking exemption privilege is narrow in scope and belongs to the regulatory authority, not the banks that it regulates and that purely factual material falls outside of the privilege:
Courts in this Circuit recognize a qualified bank examination privilege that "accords agency opinions and recommendations and banks' responses thereto protection from disclosure." In re Bankers Trust Co., 61 F.3d 465, 470 (6th Cir.1995). "It arises out of the practical need for openness and honesty between bank examiners and the banks they regulate, and is intended to protect the integrity of the regulatory process by privileging such communications." Merchants Bank v. Vescio, 205 B.R. 37, 42 (D.Vt.1997). The bank examination privilege is narrow in scope and "belongs to the regulatory authority and not to the banks that it regulates." Bank of China v. St. Paul Mercury Ins. Co., No. 03 [*7]Civ. 9797(RWS), 2004 WL 2624673, at *4 (S.D.NY Nov. 18, 2004) (citation omitted). Moreover, purely factual material falls outside the privilege, whereas opinions and deliberative processes do not. See Merchants Bank, 205 B.R. at 42. But even with respect to deliberative materials, the privilege is not absolute. Bank of China, 2004 WL 2624673, at *4.
(Sharkey, 2013 WL 2254553, at *1). Thus, in Sharkey, the court ordered the defendants to produce any documents that contain purely factual material and otherwise indicated that the documents concerning the deliberative process may be privileged:
Accordingly, any documents containing opinions and deliberative processes may be considered privileged, however Defendants are directed to produce any documents, to the extent that they exist, that contain purely factual material.
(id.).
As an initial matter, the Court notes that the defendants do not say that the documents at issue were in fact submitted to the Federal Reserve Board, or that they have been in touch with the Federal Reserve and the Federal Reserve has invoked the privilege which is the Federal Reserve's to invoke. If they were not submitted in "response" to any inquiry by the Federal Reserve, these documents are simply not protected by the qualified banking privilege (In re LIBOR, 2023 WL 2871090, at *7; 12 CFR 261.2). If, on the other hand, they were submitted, the defendants have not established that the Federal Reserve Board is invoking the privilege. Finally, the defendants have not established that the materials at issue in fact involved opinions or the deliberative process. If the regulatory authority has invoked the privilege and withheld materials are not merely factual and in fact contain opinions and deliberative process, the defendants may submit those documents for in camera review. If not, they must be produced within 14 days of this decision and order.
(3) Chain of Internal Emails regarding Archegos Default from March 26, 2021 through Sunday March 28, 2021:
The plaintiffs indicate that the defendants are improperly seeking claw-back of a certain internal email or a redaction of an email (NYSCEF Doc. No. 614). The defendants argue that they are entitled to claw-back because they "implicate legal concerns surrounding the bank's public response to the Archegos liquidation" (NYSCEF 582, at 21). As to this email chain, the defendants do not meet their burden that they are entitled to claw-back of this email chain. The defendants do not say that the email is either legal advice or discussing legal advice or anything like that. They merely say that the email implicated legal concerns. This is plainly insufficient. This email must be produced without redaction and within 14 days of this Decision and Order.
The Court has considered the parties' remaining arguments and found them unavailing.
Accordingly, it is hereby
ORDERED that the plaintiffs' motion to compel (Mtn Seq. No. 019) is granted solely to the extent set forth above; and it is further
ORDERED that to the extent documents are to be produced to the Court for in camera review, they shall be produced no later than October 11, 2024 at 9 am.
DATE 9/27/2024
ANDREW BORROK, J.S.C.

Footnotes

Footnote 1:The affidavit submitted by Charles Samuelson of HHR (NYSCEF Doc. No. 609) is simply insufficient. It is over generalized and divorced from the specific facts before the Court such as they are as they relate to the 10b-5 letter.

Footnote 2:The Court notes further that the plaintiff in this case has not yet deposed HHR, served contention interrogatories or otherwise served a notice to admit.

Footnote 3:The Court notes that the Special Master also correctly explained that whether the defendants' reliance on the 10b-5 letter was reasonable or not is irrelevant, because the 1933 Act is a strict liability statute:
The Underwriter Defendants candidly admit that any reliance on counsel's legal advice to them—such as, hypothetically, that the due diligence standard had been met—is irrelevant to the due diligence defense to the Lead Plaintiffs' strict liability claims. The due diligence defense "turns on the objective reasonableness of the Underwriters' investigation"—not on good faith—and therefore the Underwriter Defendants "could not use reliance on advice of counsel to support their defense."6 Accordingly, any attempt to rely on "advice of counsel"—as distinguished from counsel's investigation of Refco—as proof of due diligence would be prohibited at trial under Fed. R. Evid. 401.7
6 Underwriter Defendants' Letter to the Special Master dated November 30, 2009 at 8-9.
7 To the extent that a jury might be confused by the distinction between the non-privileged work of counsel and the privileged advice of counsel, that confusion could be allayed in party by an instruction under Fed. R. Evid. 105.
(In re Refco, Inc. Sec. Litig., 2010 WL 11882293, at *2, footnotes 6, 7 [SDNY Jan. 4, 2010, Capra, Special Master]).

Footnote 4:Although the defendants in their papers indicate that they "do not intend" to rely on "advice of counsel" (NYSCEF Doc. No. 582, at 5), as discussed above, they do not say however that they will not rely on an advice of counsel defense and they do not otherwise define who the "others" are or what is meant by "advice."